UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**TYEAST M. EDMOND**

**Plaintiff**

**v.**                    **Civil Action No.: 2:11-cv-02805**

**PLAINFIELD BOARD OF EDUCATION**

**Defendant**

**BRIEF OF DEFENDANT PLAINFIELD BOARD OF EDUCATION**

**IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**PICKETT & CRAIG**
Attorneys At Law
80 Main Street Ste. 430
West Orange, New Jersey 07079
(973) 762-0613 West Orange Office
(973) 540-0599 Morristown Office
(973) 540-9404 Fax
Attorneys for Defendant,
Plainfield Board of Education

Of Counsel:
Robert T. Pickett, Esq.

On the Brief:
Nixon T. Kannah, Esq..

# **TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF CONTENTS |  | ii |
| TABLE OF AUTHORITIES |  | iv |
| EXHIBITS |  | vi |
| PRELIMINARY STATEMENT |  | 1 |
| STATEMENT OF FACTS AND PROCEDURAL HISTORY |  | 1 |
| MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 |  | 6 |
| A. | Standard of Review | 6 |
| B. | Witnesses' Deposition Testimony | 8 |
|  | i. Plaintiff's Deposition Testimony | 8 |
|  | ii. Wilson Aponte's Deposition Testimony | 20 |
|  | iii. Frank Asante's Testimony | 25 |
|  | iv. Dawn Ciccone's Deposition Testimony | 28 |
|  | v. Anna Belin-Pyles' Deposition Testimony | 30 |
|  | vi. Maria Pellum's Deposition Testimony | 33 |
| LEGAL ARGUMENT |  | 34 |
| a. | Motion for Summary as to First Count of Plaintiff's Complaint First Count: Hostile Work Environment, 42 USC § 2000(e) | 34 |
| b. | Motion for Summary Judgment on Count Two of Plaintiff's Complaint Alleging Racial Discrimination Under Title VII | 38 |
| c. | Motion to for Summary Judgment on Count Three of Plaintiff's Complaint Alleging Sex Discrimination under Title VII | 40 |
| d. | Motion for Summary Judgment on Count Four of Plaintiff's Complaint Alleging Retaliation under Title VII | 41 |

e.    Motion to for Summary Judgment on Count Five of        43
      Plaintiff's Complaint Alleging Constructive
      Discharge under Title VII

f.    Motion for Summary Judgment on Count Six             44
      of Plaintiff's Complaint Alleging
       Defamation, Libel/Slander

g.    Motion to Dismiss Counts Seven, Eight and            45
      Plaintiff's Amended Complaint Alleging
      Invasion of Privacy

h.    Motion for Summary Judgment as to                    47
      Count Nine of Plaintiff's Complaint
      alleging Bad Faith

i.    Motion for Summary on Count Ten of Plaintiff's       48
      Complaint Alleging for Intentional Infliction
       of Emotional Distress

CONCLUSION                                                 49

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)                6,7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)         6

Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d. Cir.1990)   35,36

Boykins v. Lucent Technologies, Inc., 78 F.Supp.2d 402 (E.D.Pa.2000)  41

Burlington Indus. v. Ellerth, 524 U.S. 742, 762 (1998)               43,44

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)                6,7,8

Clemmons v. Guest Supply-Sysco, Not Reported in A.3d,                46
 2010 WL 4226216 (N.J.Super.A.D.)

Cortes v. Univ. of Med. & Dentistry, 391 F.Supp.2d 298, 312 (D.N.J.2005)  43

Clark County School District v. Breeden,                            35
532 U.S. 268 (2001)

Faragher v. City of Boca Raton, 524 U.S. 775,                       35,44
 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)

Ferguson v. E.I. DuPont de Nemours & Co., 560 F.Supp. 1172 (D.Del.1983)  42

Foster v. Ashcroft, 2006 WL 1995305 (D.N.J. July 14, 2006)          40

Griffin v. Tops Appliance City, Inc. 337 N.J.Super. 15,             48
766 A.2d 292 (N.J.Super. A.D. 2001)

Hargrave v. County of Atlantic, 262 F.Supp.2d 393, 427 (D.N.J.2003)  43

Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)                     35,38

Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002)   6,36

Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir.1999)  41

Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir.1999)       35

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)    6,7,8

Michell v. New Jersey Lottery, 2006 WL 1344092    35
(D.N.J. 2006 Not reported in  F.Supp.2d)

Pennsylvania State Police v. Suders, 542 U.S. 129, 124 S.Ct. 2342 (2004)    44

Peters v. Delaware River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994)    7

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300-01 (3d Cir.1997)    43

Romaine v. Kallinger, 109 N.J. 282, 289 (1988)    45

Rumbauskas v. Cantor, 138 N.J. 173, 649 A.2d 853 (1994)    45

Seidenberg v. Summit Bank, 348 N.J.Super. 243, 791 A.2d 1068    48
(N.J. Super. 2002)

Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)    39

Weston v. Pennsylvania, 215 F.3d 420 (C.A.3 (Pa.) 2001)    35

Woodson v. Scott Paper Co., 109 F.3d 913, (3d Cir.1997)    42

**STATUTES**

42 U.S.C. § 2000e-3(a)    42

42 U.S.C. §2000(e)    34,44

42 U.S.C. §2000e-2(a)(1)    35,36,38

N.J.S.A. 2A:43-1    45

**RULES**

Federal Rules of Civil Procedure 56    6

Federal Rules of Civil Procedure 56(a)    1

Federal Rules of Civil Procedure 56(c)    7

Federal Rules of Civil Procedure 56(e)    7,8,36

## <u>DEFENDANT'S SUMMARY JUDGMENT MOTION EXHIBITS</u>

D-1     Excerpts of Notes of Plaintiff's Deposition Testimony taken on May 3, 2012 (N.T. 5/3/2012)

D-2     Sandra Dabney's Discrimination/Harassment Complaint Form dated February 8, 2011

D-3     Resolution dated March 8, 20011 requiring Plaintiff undergo a psychiatric examination

D-4     Statement of Reasons

D-5     See true and correct copy of Plaintiff's Federal Complaint filed on May 16, 2011.

D-6     See Transcript of May 23, 2011 Special Meeting/Hearing

D-7     Correspondence and Resolution Affirming Order dated March 8, 2011

D-8     Plaintiff's Petition for Appeal

D-9     Correspondence from Plaintiff's Counsel dated March 1, 2013 and Report of H. Augustus Taylor, Ph.D

D-10    Defendant's Answer to Plaintiff's Complaint

D-11    Plaintiff's Amended Complaint

D-12    Answer to Plaintiff's Amended Complaint

D-13    Dr. Cowan's Report

D-14    Notes of Testimony of Plaintiff's Deposition Taken on June 8, 2012

D-15    Notes of Testimony of Plaintiff's Deposition Taken on May 17, 2012

D-16    Emails dated 5/14/2009 Granting Plaintiff Access to the Gym for Career Day

D-17    Email from Plaintiff to Mr. Wilson Aponte dated June 1, 2009 About Mr. Kopacz Speaking to Plaintiff in a Loud Voice

D-18    Emails from Mr. Wilson Aponte dated June 12, 2009 Scheduling Meeting with Plaintiff and Mr. Kopacz and Email from Plaintiff's union president, Katherine Cardona

D-19    Plaintiff's Harassment Complaint Against Mr. Wilson Aponte

D-20    Correspondence Dated December 20 RE Incidents

D-21    Statements in Support of Plaintiff's Harassment Complaint Against Mr. Aponte

D-22    Addendum to Harassment Complaint

D-23    Email from Plaintiff to Union President Dated April 4, 2009

D-24    Correspondence from Dr. Bailey dated May 8, 2009, regarding Plaintiff's transfer
to      BOAACD


D-25    Correspondence regarding Plaintiff's Transfer to Jefferson dated May 29, 2009

D-26    Correspondence regarding Plaintiff's Transfer to Cedarbrook dated June 8, 2009

D-27    Plaintiff's EEOC Complaint filed on June 15, 2009

D-28    Memorandum from Office of Administrative Services dated June 22, 2009
        Finding Plaintiff's Allegations Discrimination/Harassment Unsubstantiated

D-29    Notes of Testimony of Wilson Aponte's Deposition Taken on January 9, 2013

D-30    Mr. Aponte's Email to Assistant Superintendent Regarding Reprimanding

        Plaintiff

D-31    Notes of Testimony of Frank Asante's Deposition taken on January 8, 2013

D-32    Plaintiff's EEOC Claim dated May 13, 2010

D-33     EEOC Dismissal and Notice of Rights

D-34    Plaintiff's Discrimination/Harassment Complaint Against Easley-Card, Asante

        and others

D-35    Correspondence from Vice Principal Martinez dated 12/16/2010

D-36    Notes of Testimony of Dawn Ciccone's Deposition taken on March 18, 2013

D-37    Job Descriptions for Social Worker Position and Guidance Counsel Position

D-38    Notes of Testimony of Anna Belin-Pyles's Deposition taken on January 16, 2013

D-39    Notes of Testimony of Maria Pellum Deposition taken on January 21, 2013

D-40   Documents Produced in Responses to Request for Production of Documents to Support Plaintiff's Allegations of Hostile Work Environment and Discrimination at Evergreen School

D-41   Documents Produced in Response to Request for Production of Documents to Support Plaintiff's Allegations of Hostile Work Environment and Discrimination at Cedarbrook School

## PRELIMINARY STATEMENT

Defendant Plainfield Board of Education, by and through its attorneys Pickett & Craig, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment along with its Statement of Material Facts Not In Dispute seeking an Order dismissing Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 56(a).  Discovery has concluded and there are no material facts in dispute as to any of the causes of action set forth in Plaintiff's Complaint. Defendant is entitled to judgment as a matter of law.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff, Tyeast Edmond, was employed by the Defendant Plainfield Board of Education ("the Board" or "School District") in November 2004, as a Health and Human Services Coordinator (Social Worker) at the Evergreen School. *See Excerpts of Notes of Plaintiff's Deposition Testimony attached hereto taken on May 3, 2012 hereinafter referred to as "N.T. 5/3/2012" attached as Exhibit D-1 at pgs. 28-29*. Plaintiff was the coordinator for the Student Intervention and Family Support Services (hereinafter "SIFSS") team. *See Exhibit D-1/N.T. 5/3/2012 at pg. 31*.  The SIFFS team compromise of six to nine individuals — a teacher, nurse, social worker, administrator (principal), guidance counselor, etc.—working with parents to provide appropriate services to students.  The role of the administrator is to assemble the SIFFS team, make sure the team is cohesive and advise the team on certain decisions that may be outside the jurisdiction and mandate of the team. *See Exhibit D-1/N.T. 5/3/2012 pg. 49*. The team generally meets weekly and with the parents monthly depending on the caseload.

As the social worker on the SIFFS team, Plaintiff reported directly to the school principal. For school years 2004 through June 2008, Plaintiff reported to Gloria Williams, the principal at Evergreen. Wilson Aponte became the principal at Evergreen during the 2008-2009

school year and Plaintiff started reporting to Mr. Aponte at that time. *See Exhibit D-1/N.T. 5/3/2012 at pgs. 35, 39-40.* Plaintiff worked at Evergreen, under the supervision of Mr. Aponte, for the 2008-2009 school. In June 2009, Plaintiff was transferred from Evergreen School to Cedarbrook School. As the new social worker at Cedarbrook School, Plaintiff reported to Principal Frank Asante. At Cedarbrook, Plaintiff worked with Sandra Dabney, the guidance counselor and facilitator of the SIFFS team at Cedarbrook.

On February 8, 2011, Ms. Dabney filed a discrimination/harassment against Plaintiff. See Sandra Dabney's Discrimination/Harassment Complaint Form dated February 8, 2011 attached hereto as Exhibit D-2. Ms. Dabney alleged that for a year and a half she observed Plaintiff engaging in disruptive and spontaneous behavior particularly at SIFFS meetings. Ms. Dabney noted that during SIFFS meetings, Plaintiff's behavior was unstable; she gave angry responses; and often threatened members of the SIFSS team when the team was not in agreement with her assessment. Ms. Dabney described Plaintiff's behavior as "disruptive, unpredictable, and intense." Ms. Dabney reported that she felt "anxious and unsafe" working with Plaintiff at Cedarbrook. Finally, Ms. Dabney advised the Board that she "feared for her safety" working with Plaintiff.

On March 8, 2011, in response Ms. Dabney's complaint and the complaints of several administrators and staff regarding Plaintiff's actions and erratic behavior over the last two academic years, the Plainfield Board of Education, pursuant to *N.J.S.A.* 18A:16-2, passed a resolution mandating that Plaintiff undergo a psychiatric examination and assessment. *See Resolution dated March 8, 20011 requiring Plaintiff undergo a psychiatric examination attached hereto as Exhibit D-3.* Plaintiff, through her counsel, requested a statement of reasons and a special board meeting/hearing was scheduled for May 23, 2011. *See Statement of Reasons*

*attached hereto as Exhibit D-4.*  While Plaintiff's request for statement of reasons was pending before the Board, on May 16, 2011, Plaintiff filed the current federal action against the Plainfield Board of Education alleging hostile work environment, discrimination, and other causes of action. *See true and correct copy of Plaintiff's Federal Complaint attached hereto as Exhibit D-5.*

On May 23, 2011, the Board held a special meeting to provide Plaintiff with her requested hearing on the resolution requiring that she under a psychiatric examination. The special meeting/hearing was presided over by Administrative Law Judge Ken R. Springer. At this special hearing, Plaintiff was represented by Counsel. Administrators and staff from the Plainfield Board of Education provided statements to the Board members regarding Plaintiff's erratic behavior at work. *See Transcript of May 23, 2011 Special Meeting/Hearing hereinafter referred to as 5/23/2011 attached hereto as Exhibit D-6 pgs. 4, 31.* At the conclusion of the hearing on May 23, 2011, the Board members voted to affirm their March 8, 2011 Order that Plaintiff undergo a mandatory psychiatric examination and Plaintiff was notified of the Board's decision by correspondence dated May 25, 2011. *See Correspondence and Resolution Affirming Order dated March 8, 2011 attached hereto collectively as Exhibit D-7.* Plaintiff appealed the Board's Order to the New Jersey Department of Education/Commissioner of Education on or about June 29, 2011. *See Plaintiff's Petition for Appeal Attached hereto as Exhibit D-8.* Plaintiff subsequently agreed to undergo the psychiatric examination and her Appeal before the Department of Education settled on or about March 1, 2013. *See Correspondence from Plaintiff's Counsel dated March 1, 2013 and Report of H. Augustus Taylor, Ph.D. attached hereto as Exhibit D-9.*

As for the federal action at the bar of the Court, there is no genuine issue as to any material fact and Defendant, Plainfield Board of Education, is entitled to judgment as a matter of law on all claims set forth in Plaintiff's Complaint and Amended Complaint. On May 16, 2011, Plaintiff filed the current federal action against Defendant, Plainfield Board of Education. *See Exhibit D-5.* According to Plaintiff, she is an African-American woman and a tenured employee who has worked for the Defendant since 2004. Plaintiff's ten (10) count Complaint against the Defendant alleges that "[b]eginning 2008 through the present, Defendants use a pattern of practices which created and constitute a Hostile Work Environment, Discrimination (racial and sex), Constructive Discharge, Defamation, Invasion of Plaintiff's Privacy, Painting Plaintiff in a False Light, Piercing Public Policy, Discrimination (retaliatory), Bad Faith and the like against the Plaintiff as a result of her efforts to conduct her employment responsibilities in a manner marked by diligence, conscientiousness and integrity."[1] Id. The Complaint alleges that Defendant's actions violated Federal and State statutes and were against public policy. Id. Plaintiff seeks recovery for "physical injury to her body, loss of time from work, possible loss of pay, medical expenses, embarrassment, emotional distress, mental suffering, attorney's fees and costs, as well as other damages." Id. Plaintiff's Complaint alleged the following theories of liability:

- First Count: Hostile Work Environment, 42 USC § 2000(e);
- Count Two: Discrimination—Racial;
- Count Three: Discrimination—Sex;
- Count Four: Discrimination—Retaliation;
- Count Five: Constructive Discharge;
- Count Six: Defamation/Libel/Slander;
- Count Seven: Invasion of Privacy;
- Count Eight: False Light;
- Count Nine: Bad Faith; and

---

[1] Although Plaintiff's Complaint refers to "Defendants", the captioned of the Complaint only name one defendant, Plainfield Board of Education.

- Count Ten: Intentional Infliction of Emotional Distress.

Defendant filed its Answer with Affirmative Defenses on or about August 22, 2011.  *See true and correct copy of Defendant's Answer to Plaintiff's Complaint attached hereto as Exhibit D-10.*  Plaintiff filed an Amended Complaint on September 11, 2012 alleging that Defendant discriminated against Plaintiff in violation of 42 U.S.C. § 12101(1)(c)  " . . . by erroneously regarded Plaintiff Edmond as having a mental impairment" and that Defendant ". . . invaded the privacy of Plaintiff Edmond by virtue of its public exposure of private affairs which the public has no legitimate interest in learning of and which would be offensive to a reasonable person."  *See true and correct copy of Plaintiff's Amended Complaint attached hereto as Exhibit D-11.*  Defendant filed its Answer to Plaintiff's Amended Complaint on October 31, 2012.  *See true and correct copy of Defendant's Answer to Plaintiff's Amended Complaint attached hereto as Exhibit D-12.*

Extensive discovery has been completed and, for the reasons that follow, Defendant is entitled to Summary Judgment as to all counts set forth in Plaintiff's Complaint and Amended Complaint. Plaintiff has not presented any evidence that Defendant engaged in any conduct that violated any federal or state law upon which she would be entitled to recovery. As James Cowen, Jr., MD, Defendant's Psychiatric expert, noted Plaintiff had "conflicted problems with supervisors" and co-workers.  The doctor diagnosed her with having "symptoms of a narcissistic personality disorder in that her behavior was resistant to authority." *See a true and correct copy of Dr. Cowan's Report attached hereto as Exhibits D-13.*  Plaintiff's current federal action was in response to the Board's resolution that she undergoes a psychiatric examination. Plaintiff has since consented to the examination. The incidents that Plaintiff relies upon in support of her federal action are insufficient to establish that Defendant violated any state or federal law.

Accordingly, Defendant's Motion for Summary Judgment should be granted and Plaintiff's Complaint dismissed with prejudice.

## I.  MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

### A.  Standard of Review

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party.  *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations in its filed complaint, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*.  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party. *Anderson, 477 U.S. at 248; Celotex,* 477 U.S. at 322-26; *Doe v. Abington Friends Sch.,* 480 F.3d 252, 256 (2007). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1349 (3d Cir. 1994).

The party seeking summary judgment must initially provide the court with the basis for its motion. *Celotex Corp.,* 477 U.S. at 323. This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. Id. at 322–23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Celotex Corp.,* 477 U.S. at 324.

Once a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment under Fed. R. Civ. Pro. 56(c), the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving must set out specific facts showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. Pro. 56(e). that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id. at 322–23.* To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s]

of material fact" justifying trial. *Celotex Corp.,* 477 U.S. at 324. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Indeed, the nonmoving must set out specific facts showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. Pro. 56(e).

**B. Witnesses' Deposition Testimony**

**i. Plaintiff's Testimony**

Plaintiff, an African-American woman and a tenured employee who has worked for the Defendant since 2004, alleges that "[b]eginning 2008 through the present, Defendants used a pattern of practices which created and constitute a hostile work environment, discrimination (racial and sex), constructive discharge, defamation, Invasion of Plaintiff's privacy, painting Plaintiff in a false light, piercing public policy, discrimination (retaliatory), bad faith and the like against the Plaintiff as a result of her efforts to conduct her employment responsibilities in a manner marked by diligence, conscientiousness and integrity." *See Exhibit D-5*. Plaintiff testified that from 2004 through June 2008, she worked as a social worker at Evergreen School under the supervision of Principal Gloria Williams. There are no allegations against the Defendant during this period. According to Plaintiff the facts that support her cause of action started when Mr. Wilson Aponte became the principal at Evergreen School in September 2008. Plaintiff's Complaint alleges that Mr. Aponte, upon arriving at Evergreen School, created a hostile work environment; discriminated against her based on her race and gender.

In support of her allegations against Mr. Aponte, Plaintiff testified that at the start of the 2008-2009 school year, she went to her assigned school during the summer to set up her office. While there, she met Mr. Aponte, the incoming principal, at the school and told him that "[her] role was a key role in the building." *Exhibit D-1/N.T. 5/3/2012 pg. 50*. She also told Mr. Aponte

that it was hard getting paperwork from teachers and many times she had to tell teachers what they had to do to refer a student to the SIFSS team. Plaintiff further told Mr. Aponte that she needed his support to get some teachers to do what they needed to do in terms of getting students services. *Id*. Plaintiff told Mr. Aponte that she had some concerns about some of the teachers and the teachers' behavior towards her. *Exhibit D-1/N.T. 5/3/2012 at pg. 50-51*. She advised Mr. Aponte that "there was a clique" of teachers in the building that were not happy with her. *Exhibit D-1/N.T. 5/3/2012 at pg. 52*. According to Plaintiff, "the clique" included teachers Kevin Kopacz, Christine Shissais, Victoria Burker, and the third grade teachers.

In September 2008[2], Kevin Kopacz, Christine Shissias, Victoria Malinowski and Michael Burke complained to Mr. Aponte about Plaintiff's behavior. Plaintiff responded that these individuals were members of "the clique" that she forewarned Mr. Aponte about. *Exhibit D-1/N.T. 5/3/2012 pg. 58, 60, 63*. With regard to Michael Burke, Plaintiff testified that Mr. Burke was "rude and mean" to her. *Exhibit D-1/N.T. 5/3/2012 pg. 77*. Plaintiff recalled being yelled at by Mr. Burke on one occasion. *Exhibit D-1/N.T. 5/3/2012 pg. 78*.

In October 2008, Plaintiff attended a 504 meeting[3] with Ms. Sooby and Mr. Aponte to discuss students with learning disabilities. *Exhibit D-1/N.T. 5/3/2012 pg. 165*. Mr. Sooby is a Hispanic who teachers first grade bilingual. *Exhibit D-1/N.T. 5/3/2012 pg. 159-160*. Mr. Aponte's secretary advised Plaintiff that Ms. Sooby could not stay long for the 504 meeting because of coverage issues. *Exhibit D-1/N.T. 5/3/2012 pg. 165*. During the meeting, Plaintiff was of the opinion that Ms. Sooby was getting off track and Plaintiff tried to "bring her back on track." *Exhibit D-1/N.T. 5/3/2012 pg. 167*. According to Plaintiff, Mr. Aponte was at this 504 meeting. Although Plaintiff cannot recall Mr. Aponte's exact words, according to Plaintiff, Mr.

---

[2] Although Plaintiff testified that there were incidents involving members of "the click" dating backing to September 2008, the documents produced by Plaintiff

[3] 504 meetings are meetings to discuss students with physical disabilities and the accommodations that are needed

Aponte may have said "let the teacher talk. I'm here, I'm pulling rank.   I'm coordinating this meeting, you are finished." *Exhibit D-1/N.T. 5/3/2012 pg. 168*. After Ms. Sooby spoke, Mr. Aponte left the meeting and told Plaintiff that he wanted to see her after school.  *Exhibit D-1/N.T. 5/3/2012 pg. 180*. Plaintiff reported to Mr. Aponte's office after school that day. There were at least two representatives from Plaintiff's union present; however, Plaintiff told Mr. Aponte that she "didn't feel comfortable going [into the meeting] without a rep[resentative] of [her] choice". *Exhibit D-1/N.T. 5/3/2012 pg. 184*. According to Plaintiff, she "assume[ed]" this was not going to be a "nice meeting" and she was not going to meet with Mr. Aponte without union representatives that she has not selected being present. Id. Mr. Aponte told Plaintiff that he felt that Plaintiff was disrespecting the teacher [Ms. Sooby] by not allowing the teacher to talk during the meeting. *Exhibit D-1/N.T. 5/3/2012 pg. 187*. Plaintiff explained to Mr. Aponte that she was trying to keep within the time constraints of the meeting and that Ms. Sooby was going off topic. Both Plaintiff and Ms. Sooby were at this meeting. Mr. Aponte accepted fault for what happened earlier and apologized to both Plaintiff and Ms. Sooby.  *Exhibit D-1/N.T. 5/3/2012 pg. 190*.

In January 2009, Ms. Sooby emailed Plaintiff about referring a student to the SIFSS team. Ms. Sooby referred the student to Plaintiff and the SIFSS team after prior interventions was unsuccessful. *Exhibit D-1/N.T. 5/3/2012 pgs. 208-209*.  If a child is unsuccessful with the SIFSS team, he/she is then referred to the Child Study Team. *Exhibit D-1/N.T. 5/3/2012 pg. 212*. In this case, according to Plaintiff, Ms. Sooby referred the child directly to the Child Study Team without first going through the SIFSS team.  In addition, the student's grades did not indicate that he needed the assistance of the Child Student Team.  *Id. at pgs. 224, 222, 233-234*. Ms. Sooby was very upset with Plaintiff as result of this incident.  Plaintiff emailed Ms. Sooby

indicating that if she had any concerns with how Plaintiff was handling the case, the matter can be discussed with the principal, Mr. Aponte, and a union representative. *Exhibit D-1/N.T. 5/3/2012 pg. 231*. There was never a meeting; however, Ms. Sooby and Plaintiff exchanged several emails. On March 14, 2009, Ms. Sooby accused Plaintiff of harassing her. *Exhibit D-1/N.T. 5/3/2012 pgs. 254, 255*. Mr. Aponte advised Plaintiff to stop emailing Ms. Sooby. Plaintiff responded to Mr. Aponte on March 14, 2009, that she felt her rights were being violated because Mr. Aponte told her to stop emailing Ms. Sooby and Plaintiff was of the opinion that it was her "right to respond back [to Ms. Sooby] in writing via email". Id. Mr. Aponte emailed both Plaintiff and Ms. Sooby stating that both were wasting instructional and or preparation time by engaging in this exchange and that the matter will be addressed with the union representatives. *Exhibit D-1/N.T. 5/3/2012 pg. 258*. Two days later, Plaintiff emailed Mr. Aponte indicating that she was now "feeling harassed" by Ms. Sooby. *Exhibit D-1/N.T. 5/3/2012 pg. 256*. Plaintiff and Sooby are members of the same union. Both requested a sit down meeting with the union representative, Katherine Cardona. *Exhibit D-1/N.T. 5/3/2012 pg. 257*.

According to Plaintiff, Mr. Aponte "treated [Ms. Sooby] with favoritism because he never discussed the grades issue with Ms. Sooby and it was the grades issue that "spurred up" Ms. Sooby's hostility towards Plaintiff. *Exhibit D-1/N.T. 5/3/2012 pg. 260*. Plaintiff also alleges that her "right to defend" herself was violated when Mr. Aponte attempted to meet with her, Ms. Sooby, and union representatives, none of whom were chosen by Plaintiff to represent her in the meeting. See Excerpts of Notes of Testimony of Plaintiff's Deposition attached taken on June 8, 2012 herein after referred to as N.T. 6/8/2012 attached hereto as *Exhibit D-14  pg. 557*.

In April 2009, Ms. Eagles, a Caucasian and the school nurse, asked Mr. Aponte if she could leave the SIFSS meeting early. Mr. Aponte granted her request. According to Plaintiff,

when she previously asked Mr. Aponte if she could leave the same meeting early as well, Mr. Aponte denied her request. *See Excerpts of Notes of Testimony of Plaintiff's Deposition attached taken on May 17, 2012 herein after referred to as "N.T. 5/17/2012" attached hereto as Exhibit "D-15" pg. 439.* According to Plaintiff, Mr. Aponte yelled at Ms. Eagles on one occasion and Ms. Eagles requested a meeting with Mr. Aponte and he met with her but Mr. Aponte never met with Plaintiff. *Exhibit D-15/N.T. 5/17/2012 pg. 444.*

On May 14, 2009, Plaintiff emailed Mr. Aponte requesting access to the gym for May 29, 2009 for a Career Day program. Mr. Aponte responded granting Plaintiff access to the gym. See Emails dated 5/14/2009 attached hereto as *Exhibit D-16*. Mr. Kopacz is the gym teacher. Plaintiff never informed Mr. Kopacz that she would be using the gym on May 29, 2009 for Career Day. When Plaintiff arrived in the gym on May 29, 2009, Mr. Kopacz asked her if she was using the gym because he had gym classes scheduled. Mr. Kopacz told Plaintiff that she did not give him any information indicating that she would be using the gym. Plaintiff sent Mr. Aponte an email indicating that Mr. Kopacz spoke to her "in a loud voice. . . .in front of co-workers." *See Email from Plaintiff to Mr. Aponte dated June 1, 2009 and attached hereto as Exhibit D-17.* Mr. Aponte scheduled a meeting with Plaintiff and Mr. Kopacz to discuss the May 29, 2009 incident. However, given that Plaintiff and Mr. Kopacz were members of the same union, their union president, Ms. Katherine Cardona, asked Mr. Aponte if she could meet with Plaintiff and Mr. Kopacz instead. *Exhibit D-1/N.T. 5/3/2012 pgs. 66, 115-116, 120-121*; *See also Emails from Mr. Aponte dated June 12, 2009 Scheduling Meeting with Plaintiff and Mr. Kopacz and Email from Plaintiff's union president, Katherine Cardona attached hereto collectively as Exhibit D-18.* Plaintiff and Mr. Kopacz met with their Ms. Cardona, the union president, and Plaintiff did not have any other incident involving Kopacz. *Exhibit D-1/N.T. 5/3/2012 pg. 76, 92.*

As the Social Worker at Evergreen, Plaintiff receives requests from parents and/or teachers for their children to be evaluated to determine whether special services were needed through the SIFFS team or the Child Study Team. When Plaintiff receives such requests from teachers, Plaintiff usually ask the teachers to provide her with documentation showing what type of intervention the teachers have applied prior to referring the child to SIFFS or the Child Study Team. *Exhibit D-15/N.T. 5/17/2012 pg. 402-403.* Plaintiff requested that each teacher on the third grade team give her more than one strategy for intervention by March 17, 2009; however, third grade team teachers did not provide Plaintiff with the information she requested until April 2, 2009. *Exhibit D-15/N.T. 5/17/2012 pg. 409.* Members of the third grade team complained to Mr. Aponte that Plaintiff was not doing her job. Mr. Aponte told the teachers to put their concerns in writing. *Exhibit D-15/N.T. 5/17/2012 pg. 418-419; 422-423.* Plaintiff considered members of the third grade team a part of the "clique" that she had issues with prior to Mr. Aponte's arrival at Evergreen and she was concerned that she was not copied on the email that the SIFSS team sent to Mr. Aponte regarding their concerns about Plaintiff's job performance. *Exhibit D-15/N.T. 5/17/2012 pg. 429-430.* Mr. Aponte asked Plaintiff and the third grade team to meet; however, Plaintiff advised that she would not meet with Mr. Aponte without a union representative. *Exhibit D-15/N.T. 5/17/2012 at pg. 438.*

In addition to the above incidents involving her co-workers, Plaintiff also testified regarding several incidents allegedly involving Mr. Aponte that she believes support her action for discrimination and harassment. According to Plaintiff, in September 2008, there was a parent in Mr. Aponte's office that was inquiring about services for your child. Plaintiff was trying to explain the process to the parent when Mr. Aponte stated to Plaintiff that "we don't want to have the parents here all day. Come on. Come on . . .You just like to hear yourself talk. . .the parents

ain't got all day." *Exhibit D-15/N.T. 5/17/2012 pg. 310-311*. Plaintiff told Mr. Aponte that the

parent, who was Hispanic, did not speak English well and that the translator was not available.

Mr. Aponte apologized to Plaintiff and Plaintiff did not report this incident to anyone. *Exhibit D-15/ N.T. 5/17/2012 pg. 366.*

    The second incident relied upon by Plaintiff in support of her cause of action for

discrimination and harassment involved Mr. Aponte's role on the SIFSS team. As the Principal,

Mr. Aponte was responsible for sending out the cover letter to parents who were seeking to refer

their child(ren) to the SIFSS team. Prior to the cover letters going out, Plaintiff would normally

compile the interventions, give it the principal and the principal would send the intervention and

the cover letter to the parent. According to Plaintiff, this is how it was normally done when Ms.

Gloria Williams was the principal at Evergreen prior to Mr. Aponte's arrival. *Exhibit D-15/N.T. 5/17/2012 pg. 325*. When a parent sought recommendation to the SIFSS, Mr. Aponte indicated

that he was going to "call" and put through the recommendation instead of submitting a written

letter. *Exhibit D-15/N.T. 5/17/2012 Id at pg. 321*. When Plaintiff advised Mr. Aponte that this

was not the proper procedure, Mr. Aponte responded, "I'm the principal, Ms. Edmonds, this no

longer concerns you." *Exhibit D-15/N.T. 5/17/2012 pg. 325*

    At the start of a 504 meeting on October 9, 2008, Mr. Aponte told the parents that he

would be back for the meeting. *Exhibit D-15/N.T. 5/17/2012 pg. 334*. Mr. Aponte's secretary

later told Plaintiff that Mr. Aponte was not going to return to the 504 meeting because he was

meeting with other teachers. Id. When Mr. Aponte returned to the meeting, he apologized to the

parents and allegedly said "I'm sorry that we as a school failed you today." *Exhibit D-15/N.T. Exhibit D-15/5/17/2012 pgs. 335*. Plaintiff told the parents "I don't feel that I failed you" and Mr.

Aponte asked to see Plaintiff, Ms. Scooby and union building representatives after school.

*Exhibit D-15/ N.T. 5/17/2012 pg. 335, 340*. Mr. Aponte discussed Plaintiff cutting off Ms. Sooby during the 504 meeting. To which Plaintiff responded that she was acting on the directives that she received from Mr. Aponte's secretary to keep the meeting short. *Exhibit D-15/N.T. 5/17/2012 pgs. 346-347*. Mr. Aponte asked Plaintiff "all this is my fault?" to which Plaintiff responded, "I guess so" and Mr. Aponte stated, "Well, I'm sorry, meeting adjourned." *N.T. 5/17/2012 pg. 347*.

On December 8, 2008, Plaintiff and the family liaison, Milagros Enriquez, were in the main office checking on student's attendance to determine if home visits are necessary, when Mr. Aponte said something to the effect of, "come on, come on, let the parents get through, get out of here." *Exhibit D-15/N.T. 5/17/2012 at pg. 352-353*. Plaintiff does not recall exactly what Mr. Aponte said but she looked back and saw the parents. Plaintiff did not advised the building union representatives of this incident because, according to Plaintiff, Mr. Aponte gave the building union representatives "little perks" such as letting them leave work earlier. *N.T. 5/17/2012 pg. 359*. According to Plaintiff, Mr. Aponte had the building union representatives "in his pocket." *Id*.

On March 31, 2009, Plaintiff met with a representative from the Plainfield Board of Education Office of Administrative Services about filing a harassment complaint against Mr. Aponte. Plaintiff was given the complaint form to complete and she returned it to the Office of Administrative Services on April 3, 2009. *See True and Correct Copy of Plaintiff's Harassment Complaint Form attached hereto as Exhibit D-19.* Plaintiff's Complaint alleges that Mr. Aponte was "verbally abusive" towards Plaintiff and that he yells at Plaintiff in front of co-workers, students and parents. The Complaint further alleges that Mr. Aponte was lenient with other staff members but was "very hard on [Plaintiff]." In support of her Complaint for harassment, Plaintiff

15

attached correspondence dated December 10, 2008 addressed to Ms. Vicki Settles in which she referenced "incidents" allegedly involving Mr. Aponte on September 29, 2009, October 9, 2008 and December 8, 2008. *See Correspondence attached hereto as Exhibit D-20. Plaintiff also provided statements from Marilyn Eagles who indicated that she was present during the October 9, 2008 incident described by Plaintiff in her Complaint and Milagros Mhenriquez[4] who stated that she was present during the December 8, 2008 incident involving Plaintiff and Mr. Aponte. See both statements collectively attached hereto as Exhibit D-21.* On April 3, 2009, Plaintiff submitted an addendum to her Harassment Complaint in which she alleged that she had "been threatened indirectly by Mr. Aponte" that if she takes anything out of the building, she might not be at Evergreen School anymore. *See Addendum to Harassment attached hereto as Exhibit D-22.* According to Plaintiff, when she hand delivered her complaint form to Dr. Garnell Bailey, the affirmative action officer in the Office of Administrative Services, on April 3, 2009, Dr. Bailey stated "if you are telling me that he is harassing you, I am going to have to transfer you . . . If I do not move you then the courts will ask me why I let you stay in an environment where you feeling harassed." *See Email from Plaintiff dated April 4, 2009 addressed to Plaintiff's Union representative attached hereto as Exhibit D-23.* On May 8, 2009, Dr. Bailey advised Plaintiff that, pending Board approval, she is recommending that Plaintiff be transferred from Evergreen School to BOAACD (Barack Obama Academy) effective September 1, 2009. *See Correspondence from Dr. Bailey dated May 8, 2009 attached hereto as Exhibit D-24[5].*

---

[4] Plaintiff took Ms. Mhenriquez's deposition. She testified that she recalled the incident and felt that Mr. Aponte may have raised his voice. According to Ms. Mhenriquez, she late went to Mr. Aponte's office and discuss the matter with him. Ms. Mhenriquez testified that Mr. Aponte treated all of his staff the same.

[5] On May 29, 2009, Plaintiff received a second correspondence from Dr. Bailey advising her that effective September 1, 2009, she would be transferred from Evergreen to Jefferson and not from Evergreen to BOAACD as indicated in the May 8, 2009 correspondence. According to Plaintiff, Dr. Bailey made the decision to recommend that she be transfer to Jefferson and not BOAACD after Dr. Bailey received a parent's letter. See Correspondence from Dr. Bailey dated May 29, 2009 containing Plaintiff's handwritten notes attached hereto as **Exhibit "D-25".** Plaintiff never reported to neither Jefferson nor BOAACD; instead for the 2009-2010 school year, Plaintiff was

While Plaintiff's harassment Complaint was being investigated by the Plainfield Board of Education Office of Administrative Services, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), the New Jersey Division on Civil Rights on June 15, 2009, setting forth identical allegations as set forth in the Plainfield Board of Education Complaint. *See Plaintiff's EEOC Complaint attached hereto as Exhibit D-27.* On June 22, 2009, the Plainfield Board of Education Office of Administrative Services issued its findings that the allegations in Plaintiff's discrimination/harassment complaint filed against Mr. Aponte on April 3, 2009 were unsubstantiated. *See Memorandum from Office of Administrative Services dated June 22, 2009 and attached hereto as Exhibit D-28*[6].

At the beginning of the school year September 2009, Plaintiff reported to her new school, the Cedarbrook School, as a social worker. Plaintiff's new Principal was now Frank Asante at Cedarbrook School. *Exhibit D-14/N.T. 6/08/2012 pgs. 513-514, 529.* According to Plaintiff, when she arrived at Cedarbrook, Mr. Asante allegedly told Plaintiff that he did not asked for her to come to Cedarbrook. *Exhibit D-14/N.T. 6/08/2012 pg. 633.* When Plaintiff arrived at Cedarbrook, she was told that she would be sharing office space with the speech therapist. Although Plaintiff had shared office space with the school's guidance counselor at Evergreen, when she came to Cedarbrook she felt that she entitled to have a private office. *Exhibit D-14/N.T. 6/08/2012 pgs. 530, 532-533.* During a training session, Tracy Easley Card, the speech therapist who shared an office with Plaintiff, advised Plaintiff that Plaintiff's "stuff" was in her area and that Plaintiff had taken some of her items. *Exhibit D-14/N.T. 6/08/2012 pgs.530-531.* From Plaintiff's perspective, Ms. Card would often be on the phone with her friends "chit-

reassigned to Cedarbrook School. See Correspondence from Dr. Bailey dated June 8, 2009 attached hereto as **Exhibit "D-26"**.
[6] Upon information and belief, Plaintiff's EEOC Complaint against Wilson Aponte was also dismissed. Plaintiff has not provided any other document regarding her EEOC Complaint against Mr. Aponte.

chatting" and some of her friends sometime would come into the office and visit with her.
*Exhibit D-14/N.T. 6/08/2012 at pg. 535.* Plaintiff told Ms. Card that the office was not a
"community room" and Ms. Card told Plaintiff to get over it and that Plaintiff is not better than
everyone else. *Id.* Ms. Card would look Plaintiff "up and down" when she saw her in the
building. *Exhibit D-14/N.T. 6/08/2012 pg. 540.* When Plaintiff went to get a student for a
counseling session, the student was with Ms. Card receiving speech therapy. Plaintiff went to
Ms. Card to get the student. Ms. Card told the student to go with Plaintiff because Plaintiff "has
issues." *Exhibit D-14/N.T. 6/08/2012 at pg. 544.* Plaintiff told her union representative about the
comment and she advised her that there was no need to get administration —the principal, Mr.
Asante— involved and that as union members, Plaintiff and Ms. Card, should try to settle their
differences amicably. *Exhibit D-14/N.T. 6/08/2012 pg. 545.* Ms. Card told the union president
that she made the comment that Plaintiff had issues and that she did not want to meet with
Plaintiff and the union representative. *Exhibit D-14/N.T. 6/08/2012 pg. 546.* Mr. Asante later
met with Plaintiff and Ms. Card. Ms. Card stated that she made the statement—that Plaintiff has
issues—and that she was not going to apologize to Plaintiff. According to Plaintiff, Mr. Asante
should have given Ms. Easley Card a written reprimand for "disrespecting" her in front of the
student. *Exhibit D-14/N.T. 6/08/2012 pg. 549.*

The second issue that Plaintiff had with Ms. Asante is that he, she says, did not assist
Plaintiff to get information that she needed to do her job from Ms. Dabney.
*Exhibit D-14/N.T. 6/08/2012 pg. 626.* Mr. Asante met with Plaintiff and Ms. Dabney. *Exhibit D-
14/N.T. 6/08/2012 pg. 626.* Plaintiff also states that Ms. Dabney cut her off while making a
comment during a staff meeting and the staff laughed at Plaintiff as a result. *Id.* Mr. Asante again
met with Plaintiff. Plaintiff also recalled an incident in which a student was bleeding in the

classroom and was sent to the nurse. When Plaintiff became aware of the incident, she requested information from the teachers, nurses and counselors that were familiar with the incident but no on responded to her.  Plaintiff contacted the child's parent and the Department of Youth and Family Services (DYFS) *Exhibit D-14/N.T. 6/08/2012 pgs. 555-556*.  According to Plaintiff, these facts support her claims under the "whistle blower" act.[7] *Exhibit D-14/N.T. 6/08/2012 pg. 558, 559*.

Plaintiff alleged that Mr. Asante discriminated against her on the basis of her gender. In support of her claim for sex discrimination, Plaintiff testified that when she was having issues with other co-workers at Cedarbrook and she brought it to Mr. Asante's attention, he responded that he "was not here to deal with Atlanta Housewives situations." *Exhibit D-14/N.T. 6/08/2012 pg 634*. According to Plaintiff, Mr. Asante referred to Ms. Dabney, who was much older in age, as "big mama" and referred to Plaintiff as "little mama" *Exhibit D-14/N.T. 6/08/2012 pgs. 644-645*. According to Plaintiff, this supports her claims for age discrimination.[8]

In a SIFFS meeting at Cedarbrook School on December 9, 2009, a teacher accused Plaintiff of not doing her job.  *Exhibit D-14/N.T. 6/08/2012 pg. 588*.  Plaintiff told the teacher if she had issues with Plaintiff's job performance, the SIFSS meeting was not the venue to discuss her job performance.  *Exhibit D-14/N.T. 6/08/2012 pg. 591*. According to Plaintiff, she was "embarrassed" by the teacher's accusations.  *Exhibit D-14/N.T. 6/08/2012 pg. 594*.  Plaintiff accused the meeting facilitator, Ms. Dabney, of having her "cronies" coming into the meeting and "going off" on Plaintiff about her job performance. *Exhibit D-14/N.T. 6/08/2012 at pg. 592*. In January 2010, Plaintiff was advised that several co-workers had made complaints against her.

---

[7] There are no allegations that Defendant violated the New Jersey whistle blower act in neither Plaintiff's initial Complaint nor her Amended Complaint.
[8] There are no allegations of age discrimination in neither Plaintiff's original Complaint nor her Amended Complaint.

Exhibit D-14/N.T. 6/8/2012 pg. 586. Co-workers were concerned that Plaintiff was exhibiting "unusual behavior." *Exhibit D-14/N.T. 6/8/2012 pg. 588*. According to Plaintiff's co-workers, during the December 9, 2009 meeting, Plaintiff invited Ms. Dabney to go outside and fight. Plaintiff also called Ms. Dabney old and was very angry and threatening to Ms. Dabney to the point where Ms. Dabney became afraid for her life. *N.T. 6/8/2012 pg. 595*. As a result of the complaints and Plaintiff's behavior during the December 2009 meeting, it was recommended that Plaintiff undergo a psychiatric assessment and evaluation. *N.T. 6/8/2012 pg. 597*. Plaintiff also learned her co-workers—Sandra Dabney, Sue Stein, and Ms. Woolpert—and others filed complaints against her and requested that she be removed from Cedarbrook School. *Exhibit D-14/N.T. 6/8/2012 pgs. 586-587.*

### ii. Wilson Aponte's Deposition Testimony

Mr. Aponte has a Master's degree in bilingual education and a Masters of Arts and Education from Seton Hall University. *See Excerpts of Notes of Testimony of Wilson Aponte's Deposition taken on 1/9/2013 attached hereto and hereinafter referred to as "N.T. 1/09/2013" Exhibit D-29 pgs. 29-30*. In addition to the two masters degrees, Mr. Aponte also obtained his EDS (Educational Specialist Degree) from Seton Hall. Mr. Aponte has a supervisor's certificate, principal's certificate, and school administrator's certificate. *Exhibit D-29/N.T. 1/9/2013 Id at pg. 31*. He is currently working on his doctorate degree at Seton Hall.

Mr. Aponte worked in the Newark Public School system for twenty (20) years as a substitute teacher, a full time teacher and an administrator. *Exhibit D-29/N.T. 1/9/2013 pgs. 20-23, 26-27*. In March 2005, Mr. Aponte was hired by the Plainfield Board School District as the Vice Principal at Maxon Middle School. *Exhibit D-29/N.T. 1/9/2013 pg. 11-12*. Two years later, Mr. Aponte became the Principal at the Charles H. Stillman School in Plainfield. *Id*. Mr. Aponte,

an Hispanic, was promoted to Principal of Stillman which comprised primarily of Hispanic bilingual students. *Exhibit D-29/N.T. 1/9/2013 pg. 14*. In 2008, under the new superintendent, Dr. Steve Gallon, Mr. Aponte was one of nine principals that were transferred. Mr. Aponte was transferred from Stillman School to Evergreen Elementary School. *Exhibit D-29/N.T. 1/9/2013 pgs. 15-16*. Evergeen also had very significant English language learners (native Spanish speakers) and Mr. Aponte was transferred to Evergeen to implement the various English learning programs that he had successfully implemented at Stillman. *Id*.

Each school within the Plainfield School District has a SIFSS team which compromise of a teacher, a guidance counselor, a social worker and an administrator/principal. *Exhibit D-29/N.T. 1/9/2013 pg. 38-39*. In 2008, Plaintiff was the social worker on the SIFFS team at Evergreen School. *Id*. Mr. Aponte recalled a meeting during which Plaintiff and the bilingual teacher, Ms. Sooby, got into a verbal argument over documentation while the parent was in the meeting. Ms. Sooby was presenting her findings to the group and the child's parent when Plaintiff started interrupting Ms. Sooby.  It got to a point where the two started raising their voices at each other. *Exhibit D-29/N.T. 1/9/2013 pg. 50*. Mr. Aponte told Plaintiff and Ms. Sooby that he was taking over the meeting. *Exhibit D-29/N.T. 1/9/2013 pg. 54*. After the meeting, Mr. Aponte spoke to Plaintiff and Ms. Sooby separately and was under the impression that the issue was resolved. However, Plaintiff and Ms. Sooby continued their argument by exchanging a series of emails which they cc'd to Mr. Aponte. *Exhibit D-29/N.T. 1/9/2013 pg. 58*. Mr. Aponte met with Plaintiff and Ms. Sooby, along with their building union representatives, to discuss the situation. Mr. Aponte did not issued any disciplinary action against neither party; however, Plaintiff and Ms. Sooby were not collegial going forward and there were "little comments" back and forth in faculty meetings between them. *Exhibit D-29/N.T. 1/9/2013 pgs. 63, 65*.

Mr. Aponte recalls the situation where Plaintiff and Miss Henriques-Rivas were in the main office during the "sign-in procedure." Plaintiff and Ms. Henrieques-Rivas accused Mr. Aponte of raising his voice at them; however, Mr. Aponte denies every raising his voice. *Exhibit D-29/N.T. 1/9/2013 pg. 73*. According to Mr. Aponte, there are two sign in books in the main office. One sign-in book for the staff and another for the visitors. Plaintiff and Miss Henriques-Rivas were at the sign-in counter having a conversation while a parent was waiting to sign-in. Mr. Aponte approached Plaintiff and Miss Henirques-Rivas and told them to take their conversation elsewhere and to move aside so the parent can sign in. *Exhibit D-29/N.T. 1/9/2013 pg. 74*.

Ms. Aponte recalls a situation in which Plaintiff initially sent out an email addressed to Mrs. Malonowski and other teachers. Plaintiff later determined that Mrs. Malonowski should not have been included on the email and that she should not have received confidential information regarding a particular student. Plaintiff reported to Mr. Aponte that Mrs. Malonowski was in receipt of confidential information regarding a student. The matter was investigated and it was determined that the email was originated by Plaintiff. Mr. Aponte asked Plaintiff to apologize to Mrs. Malonowski. *Exhibit D-29/N.T. 1/9/2013 pgs. 84-85*.

Mr. Aponte recalls an incident in which Plaintiff barged into a meeting Ms. Ruiz was attending after school and demanded to speak with Ms. Ruiz immediately. Individuals that were in that meeting provided Mr. Aponte with written signed statements detailing Plaintiff's actions. When Mr. Aponte approached Plaintiff regarding the situation, Plaintiff's response to Mr. Aponte was very simple and, as always, very straight forward: That this was a "clique" and every member of the "clique" was against her. *Exhibit D-29/N.T. 1/9/2013 pgs. 90, 94*.

Mr. Aponte recalls a situation between Plaintiff and Ms. Valhalla wherein Ms. Vahalla was pulling students out to practice for the winter concert. *Exhibit D-29/N.T. 1/9/2013 pg. 97*. Both Plaintiff and Ms. Valhalla brought their complaints to Mr. Aponte. The issue was resolved with no reprimand to either party. *Exhibit D-29/N.T. 1/9/2013 pg. 102*.

Mr. Aponte testified that he gave Plaintiff permission to use certain facility, including the gym, at least two weeks prior to the career day. It was then up to Plaintiff to contact the other staff, including the gym, Mr. Kopacz, that she will be using their facility during the career day. *Exhibit D-29/N.T. 1/9/2013 pg. 106*. However, Plaintiff did not inform the gym teacher that she was going to use the gym until the day of the event. *Exhibit D-28/N.T. 1/9/2013 pg. 109-110*. Plaintiff and the gym teacher, Mr. Kopacz, got into a verbal altercation. Plaintiff reported to Mr. Aponte that Mr. Kopacz yelled at her and Mr. Kopacz reported that it was Plaintiff yelling at him. *Exhibit D-29/N.T. 1/9/2013 pgs. 104, 110*.  Mrs. Brown, the art teacher, who was present, indicated that both Plaintiff and Mr. Kopacz were shouting at each other. *Exhibit D-29/N.T. 1/9/2013 pg. 113*.

Mr. Aponte recalled an incident in which members of Home First were at the school at 8:30 A.M. to discuss a specific student. Plaintiff was in a classroom at the time and Mr. Aponte requested that Plaintiff come and attends the meeting. Plaintiff asked Mr. Aponte's assistance if this was an "emergency" to which Mr. Aponte responded "yes". *Exhibit D-29/N.T. 1/9/2013 pgs. 126-127*. Plaintiff attended the meeting and advised Mr. Aponte that she was unaware of the meeting. Mr. Aponte testified that Plaintiff was emailed regarding the date of the meeting at least two days prior although he does not recall if the provided Plaintiff with the specific time of the meeting. During the meeting, Plaintiff interrupted the representative from Home First several times indicating that she should not be participating in the meeting. *Exhibit D-29/N.T. 1/9/2013*

*pg. 135.* Plaintiff then walked out of the meeting. Mr. Aponte referred the incident to the assistant superintendent and considered reprimanding Plaintiff; however, he was told by the assistant superintendent to wait. *Exhibit D-29/N.T. 1/9/2013 pg. 137. See also Email from Mr. Aponte regarding letter of reprimand attached hereto as Exhibit D-30*

Plaintiff voiced her opinion through various emails that Mr. Aponte was harassing her. Mr. Aponte asked to speak with Plaintiff regarding her allegations; however, Plaintiff would not speak with Mr. Aponte unless a union representative outside of the building was present. According to Plaintiff, she was not comfortable with the union representatives at Evergreen. Plaintiff was making allegations of harassment against Mr. Aponte because Mr. Aponte did not agree with how she handled certain situations and there were disagreements as to how things were handled under the administration of the prior principal, Ms. Williams and how Mr. Aponte was now handling things at Evergreen. *Exhibit D-29/N.T. 1/9/2013 pg. 147.* Plaintiff worked with Mr. Aponte at Evergreen for one school year, September 2008 through June 2009.

Plaintiff also filed an internal harassment complaint against Mr. Aponte. See Exhibit D-19**.** Mr. Aponte was summoned to a meeting at the Administration Building with Plaintiff, the Assistant Superintendent, Plaintiff's union representative and several other individuals to discuss the complaint process.  Mr. Aponte provided his statement regarding the situation and the allegations. *Exhibit D-29/N.T. 1/9/2013 pg. 152-153.*

Mr. Aponte recalled an incident in which Plaintiff violated District protocol by failing to address an issue with the building administration prior to involving administration. Specifically, Plaintiff sent out an email on which she "cc'd" District administrators regarding her interaction with Mr. Kopacz regarding the use of the gym for career day without giving Mr. Aponte, the

building administrator, the opportunity to address the issue. *N.T. 1/9/2013 pg. 176*.  Mr. Aponte

issued Plaintiff a letter of reprimand on June 4, 2009 advising her of this violation. *Id*.

Plaintiff filed an Equal Employment Opportunity Commission (EEOC) Complaint against

Mr. Aponte on June 15, 2009.  *See Exhibit D-27*.

### iii. Frank Asante's Deposition Testimony

Mr. Frank Asante was the Vice Principal at Evergreen School from 1993 until 2005 and the

Principal at Cedarbrook K-8 Center from 2007 to August 2011. *See Excerpts of Notes of*

*Testimony of Frank Asante's Deposition taken on January 8, 2013 herein after referred to as*

*"N.T. 1/8/2013" attached hereto as Exhibit D-31 pgs. 11-12*. Mr. Asante has a Master's degree

in education administration from Cambridge College and is currently a doctoral candidate at

Seton Hall University. *Exhibit D-31/N.T. 1/8/2013 at pg. 14*.  Mr. Asante first meet Plaintiff

when he was Vice Principal at Evergreen School in 2005 and Plaintiff was the Health and

Human Services Coordinator. After leaving Evergreen School in September 2007, Mr. Asante

had no interaction with Plaintiff until Plaintiff was reassigned to Cedarbrook in September 2009.

*Exhibit D-31/N.T. 1/8/2013 pg. 24*.  When Plaintiff started at Cedarbrook in September 2009, she

shared office space with the speech therapist, Tracy Easley-Card. There were tension between

Plaintiff and Ms. Easley-Card. Plaintiff brought to Mr. Asante attention that she and Ms. Easley-

Card had dispute over furniture placement, use of phone, etc. Mr. Asante spoke to Ms. Easley-

Card and she had similar complaints against Plaintiff. *Exhibit D-31/N.T. 1/8/2013 at pg. 38* Mr.

Asante later spoke with the two together. Plaintiff was looking for an apology from Ms. Easley-

Card. She refused to apologize and Mr. Asante informed Plaintiff that he could not make Ms.

Easley-Card apologize and Plaintiff became upset.  *Exhibit D-31/N.T. 1/8/2013 psg. 38, 44*.

On May 13, 2010, Plaintiff filed her second EEOC Complaint. This time, Plaintiff alleged that her supervisors and co-workers were retaliating against her by reducing her duties and responsibilities on the SIFFS team. *See Plaintiff's EEOC Claim dated May 13, 2010 attached hereto as Exhibit D-32*. The EEOC was unable to conclude that the District violated any statutes as alleged in Plaintiff's EEOC Complaint and dismissed the Complaint. *See EEOC Dismissal and Notice of Rights attached hereto as Exhibit D-33*.

On June 3, 2010, Plaintiff filed a discrimination/harassment complaint against Ms. Easley Card, Mr. Asante, Joyce Todd, Rosa Salinas, and Sue Stein. *Exhibit D-31/N.T. 1/8/2013 pg. 43; See also Plaintiff's Discrimination/Harassment Complaint attached hereto as Exhibit D-34*. The allegations were investigated by the district's affirmative action officer and were determined to be "unfounded." *Exhibit D-34/N.T. 1/8/2013 pg. 107.*

Given that Mr. Asante was named in Plaintiff's discrimination/harassment Complaint, he was of the opinion that it would be a conflict to complete the portion of Plaintiff's License Social Worker (LSW) form regarding her supervisor's recommendation. Mr. Asante recommended that Plaintiff get a district supervisor to complete that portion of Plaintiff's application. *Exhibit D-31/N.T. 1/8/2013 pg. 108.*

Mr. Asante recalled an incident in which a student was scheduled to receive both social services from Plaintiff and speech therapy from Ms. Easley-Card. There was a conflict based on their availability. They both had the same time, same day available to meet with this child. They could not come to a compromise and they were yelling at each other in the hallway in front of the child. Plaintiff sent Ms. Asante an email regarding the incident and advising that Ms. Easley Card stated that Plaintiff "had issues" in the presence of the student *Exhibit D-31/N.T. 1/8/2013 pgs. 48-49.* Mr. Asante met with both parties regarding this incident.

26

The Intervention and Referral Services (I&RS), previously referred to as SIFSS, compromised of six to nine individuals— teacher, nurse, social worker, administrator, guidance counselor, etc—working with parents to provide support services to students. The group generally meets with parents on a monthly basis. *Exhibit D-31/N.T. 1/8/2013 pg. 52-53*. Prior to Plaintiff's arrival at Cedarbrook, the guidance counselor, Ms. Sandra Dabney, facilitated the SIFFS meetings. *Exhibit D-31/N.T. 1/8/2013 pg. 55, 144*. Plaintiff and Ms. Dabney often disagreed over procedures and how the group should be functioning. Plaintiff would often meet with parents individually following the group meeting and offer advice different then what was agreed upon during the group meeting. *See Correspondence from Vice Principal Martinez dated 12/16/2010 attached hereto as Exhibit D-35*. At least three parents approached Mr. Asante advising that they did not want Plaintiff working with their children. *Exhibit D-31/N.T. 1/8/2013 pg. 67*.

With regard to her interaction with the SIFFS team, Plaintiff became more aggressive in her demands/directives. *Exhibit D-31/N.T. 1/8/2013 pg. 59*. She became more aggressive in advocating her own approach. This often resulted in adversarial exchanges between Plaintiff and other members of the SIFSS team, particularly Ms. Dabney who has been the group's facilitator for twenty (20) years prior to Plaintiff's arrival at Cedarbrook. *Exhibit D-31/N.T. 1/8/2013 pg. 60, 88*. Mr. Asante contacted Miss Danice Stone, the administrator who oversaw the SIFFS committee, and reported the situation between Plaintiff and Mr. Dabney. Ms. Stone came to Cedarbrook and sat in on one or more meetings. Base on her observation, Ms. Stone reported that Plaintiff was stopping the team from doing the work that needed to be done because of Plaintiff's aggressive directives and her inability to be "collegial" with the group. *Exhibit D-31/N.T. 1/8/2013 pg. 61*.  Ms. Stone recommended that Plaintiff be removed from Cedarbrook

School. *Exhibit D-31/N.T. 1/8/2013 pg. 64*. Based on Plaintiff's actions, and what Mr. Asante

has observed and the recommendation of Ms. Stone, Mr. Asante asked the School District

Superintendent to remove Plaintiff from Cedarbrook School in March and April 2010. *Exhibit D-*

*31/N.T. 1/8/2013 pg. 66*. The Superintendent advised Mr. Asante that he would remove Plaintiff

from Cedarbrook for the next school year. *Exhibit D-31/N.T. 1/8/2013 pg. 71*. As part of

Plaintiff's annual evaluation, Mr. Asante noted that Plaintiff should "strive to work

collaboratively with staff members." *Exhibit D-31/N.T. 1/8/2013 pg. 94*. Dr. Gallon, the then

School Superintendent, who advised Mr. Asante that Plaintiff would not return to Cedarbrook for

the 2010-2011 school year, left the district in May 2010 and the Interim Superintendent returned

Plaintiff to Cedarbrook. On December 9, 2010, during a SIFSS meeting, Plaintiff threatened Ms.

Dabney and invited her to go outside for the two to engage in a fist fight. *Exhibit D-31/N.T.*

*1/8/2013 pg. 138*. Although Plaintiff was not reassigned from Cedarbrook, her presence at

Cedarbrook was reduced. Plaintiff's days were split between Cedarbrook School (3 days per

week) and PAAS School (2 days per week). About a month later, Plaintiff was assigned to

PAASS full time.

### iv. Dawn Ciccone's Deposition Testimony

Ms. Dawn Ciccone was hired by the Plainfield Board of Education in 1997. *See Excerpts*

*of Notes of Testimony of Dawn Ciccone's Deposition taken on March 18, 2013 herein after*

*referred to as N.T. 3/18/2013 attached hereto as Exhibit D-36 pg. 9*. Prior to working for

Plainfield Board of Education, Ms. Ciccone worked for the Irvington Board of Education and the

New Jersey State Department of Education. While employed with the Irvington Board of

Education, Ms. Ciccone was required to attend seminars regarding affirmative action and

discrimination issues. *Exhibit D-36/N.T. 3/18/2013 pg. 22*. Ms. Ciccone also attended affirmative

action workshop while working for the Department of Education.

In January 2010, when the affirmative action officer resigned from the Plainfield Board

of Education, Dr. Gallon, the Superintendent, appointed Ms. Ciccone the affirmative action

officer. *Exhibit D-36/N.T. 3/18/2013 pg. 25*. Ms. Ciccone was appointed to the position because

she had the requisite certification to be an affirmative action officer. *Exhibit D-36/N.T. 3/18/2013*

*pg. 28*. Dr. Gallon also formed an affirmative action team consisting of seven teachers and staff.

*Exhibit D-36/N.T. 3/18/2013 pg. 31* In April 2010, shortly after being appointed the affirmative

action officer, Ms. Ciccone attended an affirmative action conference. *Exhibit D-36/N.T.*

*3/18/2013 pg. 40*. Ms. Ciccone also attended another affirmative action conference in May 2012.

*Exhibit D-36/N.T. 3/18/2013 pg. 42*. Ms. Ciccone coordinated professional development training

in the area of discrimination for the staff at Plainfield Board of Education. In addition, former

affirmative action officers also conducted professional development training on a school-to-

school basis. *Exhibit D-36/N.T. 3/18/2013 pg. 51*. The Plainfield Board of Education has a

Comprehensive Equality Plan (CEP) which addresses discrimination in the school district.

*Exhibit D-36/N.T. 3/18/2013 pg. 57*. In addition to the CEP, the district also has procedures that

should be followed when a discrimination complaint is filed against an employee in the district.

Ms. Ciccone worked with principals in terms of affirmative action policies and what is being

shared by the principals to staff in their building in terms of procedure and affirmative action

complaint form. *Exhibit D-36/N.T. 3/18/2013 pg. 64*.  In addition, the District's affirmative

action policy is presented to principals at the beginning of the school year during the

administrators' retreat. *Exhibit D-36/N.T. 3/18/2013*.

On June 3, 2010, Plaintiff filed an affirmative action complaint against Frank Asante, Principal of Cedarbrook School; Tracy Easley-Card, speech therapist at Cedarbrook School; Joyce Todd, special education teacher at Cedarbrook School; Rosa Salinas, Vice Principal at Cedarbrook School; and Sue Stein, the school nurse at Cedarbrook School. *Exhibit D-36/N.T. 3/18/2013 at pg. 110-111; See also Exhibit D-34*. Ms. Ciccone's confidential secretary contacted each of the accused and set up appointments and each was interviewed on June 10, 2010. *Exhibit D-36/N.T. 3/18/2013 pg. 115*. Ms. Ciccone also interviewed Catherine Cardona, the President of the Plainfield Education Association (PEA), the only witnessed listed on Plaintiff's affirmative action complaint. *Exhibit D-36/N.T. 3/18/2013 pg. 116*. Following the investigation, Ms. Ciccone issued her findings which state in part "after review of statements by Accused and Witnesses, there seems to be evidence of confusion in this case, not harassment" *Exhibit D-36/N.T. 3/18/2013 pg. 121*. According to Ms. Ciccone, the investigation reviewed that there were "confusion between the job duties and overlap in responsibilities of the social worker position [Plaintiff's position] and the guidance counselor position [Ms. Dabney's position]" *Id. See also Job Descriptions for Social Worker Position and Guidance Counsel Position attached hereto as Exhibit D-37*. Ms. Ciccone concluded that "no evidence was found to support discrimination based on age and gender; nor did evidence reveal discrimination towards employee [Plaintiff] after interviewing all witnesses, all accused and review of correspondence." *Exhibit D-36/N.T. 3/18/2013 pg. 122*. Ms. Ciccone is unaware of any complaints made by any employees at the Stillman School against Mr. Aponte. *Exhibit D-36/N.T.  3/18/2013 pg. 134-135*.

### v. Anna Belin-Pyles' Deposition Testimony

Anna Belin-Pyles was the former director of Student Intervention and Family Support Services (SIFSS). Each school within the district had its own SIFSS group who was supervised

by the building administrator, the principal. As the director of SIFSS, Ms. Belin-Pyles provided district level support to all schools in the district. *See Excerpts of Notes of Testimony of Anna Belin-Pyles's Deposition taken on January 16, 2013 herein after referred to as "N.T. 1/16/2013" attached hereto as Exhibit D-38 pgs. 14.* She supervised the social workers for each school in the District. Ms. Belin-Pyles often visited the schools, interacted with social workers and held monthly meeting with the social workers and other district personnel. *Exhibit D-38/N.T. 1/16/2013 pg. 16.* Ms. Belin-Plyes did not have any problems with Plaintiff; however, she was aware that Plaintiff was having some issues with co-workers and administrators while at Evergreen School. *Exhibit D-38/N.T. 1/16/2013 pg. 22.* The SIFSS team needed to work more cohesively as a team and the roles and responsibility of the various members of the team clarified. *Exhibit D-38/N.T. 1/16/2013 pg. 24.* In 2008, Plaintiff made an allegation of discrimination against Mr. Aponte and Ms. Belin-Pyles referred her to Human Resource (HR). *Exhibit D-38/N.T. 1/16/2013 pg. 30.* Prior to Plaintiff's allegations against Mr. Aponte, Ms. Belin-Pyles was aware of some individuals indicating that they were "having difficult time working with [Plaintiff]" *Exhibit D-38/N.T. 1/16/2013 pg. 28.*

In May 2010, Ms. Belin-Pyles became interim superintendent and superintendent of schools on July 1, 2012. *Exhibit D-38/Id at pg 8-9.* In addition to the affirmative action officer, the District also has an affirmative action team which consists of approximately five members. *Exhibit D-38/N.T. 1/16/2013 pg. 36-37.* The affirmative action officer coordinates professional development training in connection with affirmative action policy. *Exhibit D-38/N.T. 1/16/2013 pg. 40, 42.* Through in-service training, providing district personnel with district policies and procedures, as well as making same available on the district's website all staff, pupils and vendors in the district are made aware that harassment is prohibited within the district. *Exhibit D-*

*38/N.T. 1/16/2013 pg. 48*.  Staff members are required to attend annual trainings and workshops on the topics of harassment and discrimination. *Exhibit D-38/N.T. 1/16/2013 pgs. 49-50*. Findings of discrimination or harassment would result in disciplinary action ranging from oral reprimand to tenure charges.

Between 2009 and 2010, Ms. Belin-Pyles was not aware of any issues between Plaintiff and Mr. Asante, the principal at Cedarbrook School; however, Ms. Belin-Pyles was aware of issues between Plaintiff and other members of the SIFSS team at Cedarbrook. *Exhibit D-38/N.T. 1/16/2013 pg. 55*. Specifically, there was a conflict between Plaintiff and team member, Mrs. Sandra Dabney, as to who was actually the leader of the team.  The decision as to who would be the leader of the SIFSS team is a building decision made by the principal of the building. *Exhibit D-38/N.T. 1/16/2013 pg. 58*. Both Plaintiff and Ms. Dabney were qualified to be in the role as a leader of the team and it was Principal Asante's decision who would be the leader of the team and he appointed Ms. Dabney. There was a power struggle between Plaintiff and Ms. Dabney. Ms. Belin-Pyles met with Plaintiff, Ms. Dabney and Mr. Asante to address these issues. Ms. Belin-Pyles also sat in on some meetings to observe how the team was functioning. Furthermore, she referred a "seasoned social worker," Mrs. Danice Stone, to work with the team. *Exhibit D-38/N.T. 1/16/2013 pg. 65*.

In March 2011, Ms. Belin-Pyles, as interim superintendent of schools, recommended to the Board that Ms. Edmonds undergo a psychiatric evaluation and assessment after receiving information and complaints that Plaintiff had been exhibiting "questionable behavior" towards her co-workers and other staff. *Exhibit D-38/N.T. 1/16/2013 pgs. 85, 89*.  Mr. Asante, Ms. Easley-Card, Ms. Dabney and Ms. Stein, Plaintiff's supervisor and co-workers, provided

information to the Board regarding Plaintiff's questionable behavior that would warrant Plaintiff

undergo a psychiatric evaluation and assessment. *Exhibit D-38/N.T. 1/16/2013 pg. 77.*

It is not the District's policy to publish, on the District's website, information pertaining

to a staff or student's medical condition and the District did not published the Board's resolution

that Plaintiff undergo a psychiatric evaluation on the district's website. *Exhibit D-38/N.T.*

*1/16/2013 pg. 92-93.*

Ms. Belin-Pyles was aware of the Discrimination/Harassment Complaint Form that was

completed by Plaintiff asserting allegations against Mr. Asante and others in May 2010. *Exhibit*

*D-38/N.T. 1/16/2013 pg. 110.*

### vi. Maria Pellum's Deposition Testimony

Maria Pellum is a resident of Plainfield. Her son attended Evergreen School when Plaintiff

was the social worker at Evergreen. *See Excerpts of Notes of Testimony of Maria Pellum*

*Deposition taken on January 21, 2013 herein after referred to as "Exhibit D-39/N.T. 1/23/2013"*

*attached hereto as Exhibit D-39 pg. 11.* Ms. Pellum usually submits Open Public Records Act

("OPRA") requests to the Plainfield School District for executive sessions minutes. *Exhibit D-*

*39/N.T. 1/23/2013 pg. 14.* When Ms. Pellum received the minutes from the executive sessions,

confidential information is always redacted by Plainfield School District. *Exhibit D-39/N.T.*

*1/23/2013 pg. 15.* When Ms. Pellum received the "redacted" executive session minutes of the

meeting in which the Board approved a resolution authorizing and ordering Plaintiff to undergo a

psychiatric evaluation and assessment, she posted the redacted document on her "Scribd" page.

*Id.* A few hours later, she noticed that the redactions were gone and the full document was

displayed on her Scribd page. *Exhibit D-39/N.T. 1/23/2013 pg. 16.* When Ms. Pellum noticed

that the document was now "unredacted" on her Scribd, she took down the document from her

Scribd page because she "was very uncomfortable". *Id; pgs. 17, 19*. Ms. Pellum testified that when she received the minutes, she believed that the information regarding Plaintiff's ordered psychiatric examination was redacted. *Exhibit D-39/N.T. 1/23/2013 pg. 21*.

Base on the forgoing testimony and documents provided by Plaintiff in discovery, Plaintiff alleges that Mr. Aponte and Mr. Asante created a hostile work environment and discriminated against her on the basis of her race and gender. Plaintiff also alleges that her transfer from Evergreen was in retaliation to her EEOC complaint against Mr. Aponte. Plaintiff alleges that as a result of her filing her EEOC complaint against Mr. Aponte, she was "constructively discharged" because Mr. Aponte significantly reduced her case law by assigning her caseload to Ms. Danice Stone. In addition to her discrimination claims, Plaintiff also seeks recovery for defamation/libel/slander; invasion of privacy[9]; false light bad faith; and intentional inflection of emotional distress.

Based on the facts adduced from the Plaintiff and witnesses listed above, the Defendant is entitled to summary Judgment on all Counts set forth in Plaintiff's Complaint and Amended Complaint.

## II. LEGAL ARGUMENT

### a. Motion for Summary as to First Count of Plaintiff's Complaint First Count: Hostile Work Environment, 42 USC § 2000(e)

In order to establish a Title VII claim for a hostile work environment, a plaintiff must show: (1) that he or she suffered intentional discrimination in a work environment because of his or her sex, race, color, national origin, or religion; (2) the discrimination was pervasive and

---

[9] Count Seven of Plaintiff's Complaint alleges invasion on privacy on the theory that the Assistant Superintendent allegedly discussed Plaintiff's personnel file with the principal at the school where Plaintiff was being transfer. In her Amended Complaint, Plaintiff's invasion of privacy is based on allegations that the Defendant released private information regarding the Board's decision that Plaintiff undergo a psychiatric examination to the public. Defendant is entitled to summary judgment on both claims for invasion of privacy.

regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex (or race) in that position; and (5) the existence of *respondeat superior* liability. 42 U.S.C. §2000e-2(a)(1); *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d. Cir.1990)); See also *Michell v. New Jersey Lottery*, 2006 WL 1344092 (D.N.J. 2006 Not reported in F.Supp.2d). The plaintiff must also show that the harassing behavior "sufficiently severe or pervasive" alter the conditions of his or her employment. *Pa. State Pol. v. Suders,* 542 U.S. 129, 133 (2004); See *Weston v. Pennsylvania*, 215 F.3d 420 (C.A.3 (Pa.) 2001) noting that in order to fall within the purview of Title VII's prohibition against hostile work environment, the conduct in question must be severe and pervasive enough to create an objectively hostile or abusive work environment, such that a reasonable person would find hostile and that the victim-employee subjectively perceives as abusive or hostile. A court must consider the totality of the circumstances when determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Andrews v. City of Phila.,* 895 F.2d 1469, 1482 (3d Cir.1990). Factors which may indicate a hostile work environment include (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993); *Clark County School District v. Breeden,* 532 U.S. 268, 270, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (A recurring point in Court's opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (The Supreme Court made it clear that

conduct must be *extreme* to amount to a change in the terms and conditions of employment )

*[Emphasis added]*

Plaintiff simply testified to the allegations set forth in her Complaint. As this Court is aware, the non-moving party may not rest upon its mere allegations in its filed complaint, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice.  Rather, there must be evidence on which the jury could reasonably find for the non-moving party.  *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002). Plaintiff cannot meet her burden as there is no evidence that Defendant violated any federal or state law under which Plaintiff may be entitled to recovery.

Arguendo, accepting these allegations and Plaintiff's testimony as true, they are insufficient to establish a cause of action for hostile work environment under Title VII. 42 U.S.C. §200e-2(a)(1);  *Kunin v. Sears Roebuck & Co.,* 175 F.3d 289, 293 (3d Cir.1999) (quoting *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d. Cir.1990))

Plaintiff's testimony regarding her interactions with her co-workers and Principal Wilson Aponte and the six paragraphs set forth in the First Count of Plaintiff's Complaint appear to be nothing more than mere disagreement or difference of opinions between Plaintiff, her co-workers and Mr. Aponte. For example, Plaintiff alleged and testified regarding a meeting with a Hispanic parent regarding her daughter's progress in school. While Plaintiff was talking to the parent, Mr. Aponte allegedly yelled, "Ms. Edmond you are going around and around in circles and we are not getting anywhere." *See Exhibit D-5*.  Plaintiff also alleged and testified that when Mr. Aponte later learned that the parent did not speak English and that Plaintiff merely sought to insure that the parent understood the proceedings, Mr. Aponte later "apologize[d]" to Plaintiff.  Plaintiff

also alleged and testified that Mr. Aponte accused her of not allowing another teacher to speak during the meeting to which Plaintiff responded that "she merely sought to refocus the meeting in the interest of time." Mr. Aponte advised Plaintiff that he was "pulling rank" and the teacher was permitted to speak. Another incident that Plaintiff testified to in support of her claim for Hostile Work Environment allegedly occurred during a 504 meeting. During that meeting with a parent, Mr. Aponte excused himself from the meeting and indicated that he would be right back. He allegedly did not return until twenty (20) minutes later. When Mr. Aponte returned, he apologized to the parent and allegedly told the parent "we have failed you as a school and I apologize for that." Plaintiff alleges that when she interjected and said to the parent, "I don't feel I failed you and I am doing my best to assist you", Mr. Aponte asked to see Plaintiff after school. The Complaint alleges that the purpose of the afterschool meeting was to "verbally reprimand" Plaintiff in front of PEA representatives. However, according to Plaintiff's deposition testimony, the afterschool meeting focused on a prior incident between Plaintiff and Mr. Aponte regarding Plaintiff not permitting another teacher to speak during a meeting. Plaintiff explained to Mr. Aponte and those in attendance that she sought to redirect the other teacher's comments during the meeting to keep within the time constraints. When this was explained to Mr. Aponte, he "accepted fault" and "apologized" to Plaintiff.

There are no allegations in the First Count of Plaintiff's Complaint nor is there any evidence that Plaintiff suffered intentional discrimination in the work environment because of her sex, race, color, national origin or religion. Plaintiff's testimony, the testimony of her witnesses, and the documents that Plaintiff produced failed to establish a cause of action for hostile work environment. Plaintiff's witness, Milagros Mhenriquez, who allegedly witnessed

the December 8, 2008 incident between Plaintiff and Mr. Aponte, testified that Mr. Aponte treated all of the staff the same.

During discovery, Plaintiff was asked to produce all documents to support her claims that she was subjected to hostile work environment or any other violation during the period set forth in her Complaint while at Evergreen and Cedarbrook Schools.  With regard to her tenure at Evergreen, Plaintiff produced several packages of documents which she labeled "*Evergreen Kopacz* 2008-2009"; "*Evergreen Vahalha 2008-2009*"; *Evergreen 3rd Team 2008-2009*; "*Evergreen Aponte Racism 2008-2009*"; "*Aponte Evergreen and Evergreen Sooby 2008-2009*." These documents are collectively marked as *Exhibit D-40*.  As for Cedarbrook, Plaintiff produced a package of document which she labeled "Cedarbrook Evidence of Hostile Work Environment." See Exhibit D-41**.**  A review of the testimony and the documents produced by Plaintiff failed to establish that Plaintiff was subjected to hostile work environment which were frequent, severe, or extreme to the extent to interfere with or affect Plaintiff's work performance at the Evergreen and Cedarbrook Schools during the 2008-2009 school year.  *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

### b.  Motion for Summary Judgment on Count Two of Plaintiff's Complaint Alleging Racial Discrimination Under Title VII

Plaintiff has not produced shred of evidence in discovery to state a cause of action for racial discrimination under Title VII and Defendant is entitled to Summary Judgment. Regarding racial discrimination claims, Title VII provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . . 42 U.S.C. § 2000e–2(a)(1).

To assert a *prima facie* case of racial discrimination, the Plaintiff must allege that (1) she is a member of a protected group; (2) she is qualified for the position; (3) she was subject to an adverse employment action; and (4) other similarly situated individuals not in the protected group received better treatment. *Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)*.

In support of her claim for racial discrimination, Plaintiff, an African American woman, alleges that that Mr. Aponte permitted Marilyn Eagles, a Caucasian woman and the School Nurse, to be excused early from a meeting; however, when Plaintiff sought to be excused from the same meeting, Mr. Aponte denied Plaintiff's request and advised her that Ms. Eagels, the school nurse, was permitted leave the meeting early because the nurse's "time is limited." *See Exhibit D-5*. Count II of Plaintiff's Complaint also alleges that, a co-worker, Ms. Sooby, a Hispanic teacher was sending Plaintiff harassing emails at work. Plaintiff requested a meeting with Mr. Aponte and Ms. Sooby to discuss the issues between Plaintiff and Ms. Sooby. Plaintiff alleges that during this meeting, Mr. Aponte did not "explore Plaintiff's concerns nor provide Plaintiff with the same support." See paragraph 8 of Plaintiff's Complaint. Finally, Plaintiff alleges that Mr. Aponte sought to have Plaintiff replaced by a Hispanic Social worker and that on June 16, 2009, Plaintiff was transferred to Cedarbrook Elementary School and Ms. Sarinet Thorne, a Hispanic Social Worker immediately replaced Plaintiff.  Plaintiff did not present any other evidence outside of her own deposition testimony to support these allegations. She is simply relying upon her pleadings. Accepting Plaintiff's testimony as true, it is insufficient to state a cause of action for racial discrimination and Defendant is entitled to summary judgment on this count as a matter of law.

In *Foster v. Ashcroft*, 2006 WL 1995305 (D.N.J. July 14, 2006), the Court noted that an adverse employment action is an action that tangibly alters the terms and conditions of employment such as resulting in ineligibility for an automatic step salary increase or a nondiscretionary salary increases.  In the current case, the allegations that Mr. Aponte permitted the school nurse to leave the meeting early, deny Plaintiff's request to do the same and did not explore nor provide Plaintiff with support in the meeting with Ms. Sooby, do not amount to adverse employment actions against Plaintiff to state a cause of action for racial discrimination under Title VII.[10] Furthermore, Plaintiff has not presented any evidence of any adverse impact on the Plaintiff as a result of her being transferred to Cedarbrook.  Accordingly, Defendant's Motion for Summary Judgment should be granted as to Count Two of Plaintiff's Complaint.

### c. Motion to for Summary Judgment on Count Three of Plaintiff's Complaint Alleging Sex Discrimination under Title VII

In support of her claim for sex discrimination, Plaintiff alleges in Count Three of her Complaint that Mr. Aponte "permitted the male staff members to dominate and question Plaintiff about aspects of her job." *See paragraph 14 of Plaintiff's Complaint*. Plaintiff also alleges that Mr. Kopacz, the Caucasian gym teacher, yelled at her for using the gym for a Career Day program notwithstanding the fact that Plaintiff received prior approval from Mr. Aponte to use the gym. Plaintiff alleges that Mr. Aponte "intentionally neglected to advise Mr. Kopacz that Plaintiff had prior approval for the use of the gym. As a result, the gym teacher yelled at Plaintiff." *See paragraph 14 of Plaintiff's Complaint*. Plaintiff alleges that when she notified the District Administrators of the incident, Mr. Aponte gave her a written reprimand and told her

---

[10] Although Plaintiff also alleges in Count Two of her complaint that that she was transferred to another school, there are no allegations that the transferred was an adverse employment action (i.e. that Plaintiff's compensation at the new school was lower or that the position at the new school was less desirable when compare with her prior position). In addition, there are no allegations that the transferred was racially motivated; but rather was done in retaliation to Plaintiff filing a complaint with the District against Mr. Aponte. These allegations are discussed more fully in Defendant's request for dismissal of Count Four of Plaintiff's Complaint alleging discrimination based on retaliation.

that she neglected to follow building protocol. Finally, Plaintiff alleges that when she was having lunch, Mr. Aponte leaned into her ear and whispered to her inquiring about when Plaintiff's lunch hour was over. Again, the only evidence to support these allegations are Plaintiff's deposition testimony. Accepting Plaintiff's testimony as true, these facts are insufficient to state a cause of action for sex discrimination under Title VII. Defendant is entitled to Summary Judgment on Count Three of Plaintiff's Complaint.

To state a prima facie cause for sex discrimination under Title VII, a plaintiff must show that she suffered some form of adverse employment action as a result of her gender and that this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *Boykins v. Lucent Technologies, Inc.*, 78 F.Supp.2d 402 (E.D.Pa.2000) (citing *Jones v. School Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir.1999)). The allegations set forth in Count Three of Plaintiff's Complaint to which she testified fail to establish that she was discriminated against because of her sex. In addition, the fact that Plaintiff's male co-workers allegedly dominated and questioned her about her job; she was yelled at by the gym teacher; and Mr. Aponte inquired in her ear as to when her lunch hour was over, are not adverse employment action taken against Plaintiff because of her sex. Accordingly, Defendant is entitled to Summary Judgment on Count Three of Plaintiff's Complaint.

### d. Motion for Summary Judgment on Count Four of Plaintiff's Complaint Alleging Retaliation under Title VII

Plaintiff has not presented any evidence to establish a *prima facie* case for retaliation under Title VII. The anti-retaliation section of Title VII provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a

41

charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

For Plaintiff to recover for retaliation under Title VII, she must allege and prove that (1) she was engaged in a protected activity known to the employer; (2) she was thereafter subjected to an adverse employment decision by the employer; and (3) there was a causal link between the protected activity and the adverse employment decision. *Woodson v. Scott Paper Co.,* 109 F.3d 913, (3d Cir.1997). To satisfy the causation element, the plaintiff must raise the inference that her protected activity was the likely reason for the adverse action. *Ferguson v. E.I. DuPont de Nemours & Co.,* 560 F.Supp. 1172 (D.Del.1983).  Count Four of Plaintiff's Complaint failed to allege any protected activity in which Plaintiff was engaged which resulted in the alleged retaliation by the Defendant. In addition, there is no testimony or any other evidence that any actions were taken against Plaintiff because she was engaged in a protected activity. Plaintiff stated in *Exhibit "D-23"* that when she reported to Dr. Bailey that Mr. Aponte was harassing her, Dr. Bailey stated

> . . .  if you are telling me that he is harassing you, I am going to have to transfer you. . .if I do not move you than the courts will ask me why I let you stay in an environment where you feeling harassed." See Exhibit D-23.

On May 8, 2009, Dr. Bailey advised Plaintiff that, pending Board approval, she is recommending that Plaintiff be transferred from Evergreen School to BOAACD (Barack Obama Academy) effective September 1, 2009. *See Exhibit D-24.* Dr. Bailey's recommendation to transfer Plaintiff from Evergreen was not because she was engaged in a protected activity but rather because Dr. Bailey was concerned about Plaintiff's well-being and possible liability if Plaintiff remained at Evergreen.

Furthermore, transferring Plaintiff from Evergreen was not an adverse employment decision.  Under Title VII, an adverse employment action "alters the employee's compensation, terms, conditions, or privileges of employment." *Cortes v. Univ. of Med. & Dentistry,* 391 F.Supp.2d 298, 312 (D.N.J.2005).  As such, while a discharge or a refusal to hire would be an actionable adverse employment action, "when one goes beyond that, the conduct must be serious and tangible enough to materially alter an employee's terms and conditions of employment or adversely affect her status as an employee." Id.  Not everything that makes an employee unhappy 'qualifies as [an adverse employment action], for [o]therwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.' *Id.*  Rather, a tangible employment action "in most cases inflicts direct economic harm." *Burlington Indus. v. Ellerth,* 524 U.S. 742, 762 (1998); Simply stated, to constitute an adverse employment action "the retaliatory conduct alleged must be 'serious and tangible' enough to alter an employee's compensation, terms, conditions, or privileges of employment, deprive her future employment opportunities, or otherwise have a 'materially adverse' effect on her status as an employee." *Hargrave v. County of Atlantic,* 262 *F.Supp.*2d 393, 427 (D.N.J.2003) (quoting *Robinson v. City of Pittsburgh,* 120 *F.*3d 1286, 1300-01 (3d Cir.1997)). In the matter *sub judice*, there are no allegations or evidence that Plaintiff sustained any harm, economic or otherwise, as a result of being transferred from Evergreen to Cedarbrook School.  Accordingly, Defendant is entitled to Summary Judgment on Count Four of Plaintiff's Complaint.

   **e.  Motion to for Summary Judgment on Count Five of Plaintiff's Complaint Alleging Constructive Discharge under Title VII**

There is no evidence that Plaintiff was constructively discharged. Plaintiff alleges that she was constructively discharged because her supervisor reduced her workload.  Accepting this

as true, Defendant is nonetheless entitled to Summary Judgment. Under Title VII, Plaintiff who advances compound hostile-environment constructive discharge claims must show working conditions so intolerable that a reasonable person would have felt compelled to resign. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. To establish "constructive discharge," a plaintiff must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response. *Faragher v. Boca Raton,* 524 U.S. 775, 808, 118 S.Ct. 2275, 141 L.Ed.2d 662; See also *Burlington Industries, Inc., v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2251. Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign? *Pennsylvania State Police v. Suders,* 542 U.S. 129, 124 S.Ct. 2342 (2004). In the matter *sub judice*, there are no allegations or evidence that Plaintiff "resigned" from her position with the Defendant. Plaintiff went on administrative leave pending the outcome of her Administrative Law Action challenging the Board's psychiatric assessment and evaluation directive. Given that there is no evidence that Plaintiff resigned from her employment position with the Defendant, Defendant is entitled to Summary Judgment on Count Five of Plaintiff's Complaint.

  **f.**  **Motion for Summary Judgment on Count Six of Plaintiff's Complaint Alleging Defamation, Libel/Slander**

  Plaintiff has not presented any evidence during discovery to support her claim for Defamation. Plaintiff simply alleged in her Complaint that a co-worker stated that Plaintiff "had issues" in the presence of students and that the co-worker admitted making the statement in an email. *See Exhibit D-5*. Plaintiff also alleged that the Vice Principal at Cedarbrook School stated in a letter that "he was concerned " of Plaintiff's lack of professionalism. Plaintiff seeks recovery

for defamation under N.J.S.A. 2A:43-1. However, that statute entitled *privileged communications* provides that

> The privileged character attaching to the publication of judicial or other proceedings shall extend to the publication in any newspaper of official statements issued by police department heads and county prosecutors in investigations in progress or completed by them, and which are accepted in good faith by the publisher of any newspaper, and the privileged character thereof shall be a good defense to any action for libel, unless malice in fact be shown by the plaintiff therein.

It is obvious that N.J.S.A. 2A:43-1 is not applicable to the facts of this case. Furthermore, Plaintiff has not presented any evidence that the alleged statements in Count Six of Plaintiff's Complaint are false or defamatory. A defamatory statement is one that is false and injurious to a person's reputation. *Romaine v. Kallinger,* 109 *N.J.* 282, 289 (1988). Without alleging and proving the "falsity" of the statements referenced by Plaintiff in her Complaint, Plaintiff cannot recover for defamation and Defendant is entitled to Summary Judgment as to Count 6 of Plaintiff's Complaint.

### g. Motion to Dismiss Counts Seven, Eight and Plaintiff's Amended Complaint Alleging Invasion of Privacy

The tort of invasion of privacy comprises intrusion, public disclosure of private facts, placing a plaintiff in false light in public eye and appropriation, for a defendant's benefit, of plaintiff's name or likeness. *Rumbauskas v. Cantor,* 138 N.J. 173, 649 A.2d 853 (1994). In Count Seven and Eight of her Complaint, Plaintiff alleges that prior to her transfer to Cedarbrook School, Administrators Frank Asante and Dr. Garnell Bailey discussed Plaintiff's personnel file outside of Plaintiff's presence. Plaintiff also alleges that statements that Plaintiff was "unstable, angry, exhibiting severe behavior. . ." as prepared by Defendant Sandra Dabney, placed Plaintiff in a false light. Finally, in her Amended Complaint, Plaintiff alleged that Defendant invaded her

45

privacy by exposing information regarding that Board's Order that Plaintiff under a psychiatric evaluation to the public. Plaintiff has not presented any evidence to establish that Defendant invaded her privacy. With regard to Plaintiff's allegations that administrators from one school discussed with administrators of another school in the same district her transfer, this alleged discussion does not amount to disclosure of private facts to the public. --- the discussion was an internal one from one school administrator to another to assess the best placement for Plaintiff at the time. Plaintiff alleges that the administrators discussed her personnel file. Plaintiff has not presented any evidence that any portion of her personnel file or any statements allegedly made by the administrators were publicly disseminated. *Clemmons v. Guest Supply-Sysco*, Not Reported in A.3d, 2010 WL 4226216 (N.J.Super.A.D.). Accordingly, Defendant is entitled to Summary Judgment on Counts Seven and Eight of Plaintiff's Complaint.

Similarly, Defendant is entitled to Summary Judgment for invasion of privacy as alleged in Plaintiff's Amended Complaint on the same Count. Plaintiff alleged in her Complaint that Defendant "posted" Confidential Executive Session minutes on the world-wide web for anyone with access to the internet to openly view. Plaintiff has not presented any evidence to substantiate this allegation. Ms. Belin-Plyes, the Superintendent of Schools, testified that the District does not place confidential executive sessions minutes on the website. The individual who received and placed this information on her private website outside of the school district was Maria Pellum who had requested the documents pursuant to New Jersey's Open Public Records Act ("OPRA"). Ms. Pellum testified during the course of her deposition that she is a community activist who often submits OPRA request to the Plainfield Board of Education requesting executive sessions minutes. *See Exhibit D-36*. Ms. Pellum testified that when she

received minutes from the executive sessions, confidential information are always redacted by Plainfield School District. *N.T. 1/23/2013 pg. 15*.

Ms. Pellum specifically testified that when she received the minutes from the Special Board meeting on March 8, 2011, she believe that the information regarding Plaintiff's psychiatric examination was indeed redacted.  When Ms. Pellum received the "redacted" executive session minutes for that Board meeting, she posted the redacted document on her personal "Scribd" page. Id. A few hours later, she noticed that the redactions were gone and the full document was displayed on her Scribd page. *N.T. 1/23/2013 pg. 16*. When Ms. Pellum noticed that the document was now "unredacted" on her Scribd page, she took down the document from the Scribd page because she "was very uncomfortable". *Id; 17, 19*. Defendant is obliged to comply with all OPRA requests. Defendant did this by redacting confidential information. It was Ms. Pellum who placed the information on the web. It was Ms. Pellum's Scribd website that unredacted the documents. Defendant cannot be held liable for the actions of Ms. Pellum, a private citizen, over whom Defendant had no control over how she posted the fully redacted Board Executive minutes for March 8, 2011. Accordingly, Defendant's Motion for Summary Judgment should be granted as to Plaintiff's Amended Complaint Count 2.

### h. Motion for Summary Judgment as to Count Nine of Plaintiff's Complaint alleging Bad Faith

Bad faith is an element of a cause of action for breach of the implied covenant of good faith and fair dealing. The claim requires an arbitrary, unreasonable or capricious exercise of discretionary authority with the objective of preventing the other party from receiving its reasonably expected fruits under the contract and thus an allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract absent improper motive. *Seidenberg v.*

*Summit Bank*, 348 N.J.Super. 243, 791 A.2d 1068 (N.J. Super. 2002).  Although Plaintiff referenced the PEA Contract in Count Nine of her Complaint, there are no allegations or cause of action for breach of contract in Plaintiff's Complaint. In addition, there is evidence that Plaintiff was denied any entitlement under the PEA contract as a result of Defendant's alleged bad faith. Plaintiff referenced the fact that Mr. Aponte gave her a written reprimand and stated that she violated "building protocol" going to outside administrators without given the building administrator the opportunity to address the issue. The Superintendent of Schools testified that this is actually a district protocol. *Exhibit D-38 pg. 118-121*. Although Mr. Aponte may have mischaracterized the district protocol as "building protocol", his reprimand of Plaintiff was just and did not deny Plaintiff any contractual right. Accordingly, Defendant is entitled to Summary Judgment on County Nine of Plaintiff's Complaint.

### i.    Motion for Summary on Count Ten of Plaintiff's Complaint Alleging for Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendant's actions caused her to suffer emotional distress. To establish a claim for intentional infliction of emotional distress, Defendant's conduct must be extreme and outrageous. The conduct must be so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community. *Griffin v. Tops Appliance City, Inc.* 337 N.J.Super. 15, 766 A.2d 292 (N.J.Super. A.D. 2001).  Plaintiff has not alleged nor presented any evidence that Defendant's conduct was reckless, extreme and or outrageous to support her claim of intentional inflection of emotional distress. Furthermore, there are no facts that would warrant an inference that Defendant's conduct was reckless, extreme or outrageous. Plaintiff's medical expert, Dr. Taylor is of the opinion that Plaintiff is stressed because of the current litigation. *See Exhibit D-9*. There is no evidence that Defendant's (or any of its employees' or agents') conduct was extreme,

outrageous or reckless and that such conduct caused Plaintiff any injury.  Accordingly,

Defendant is entitled to Summary Judgment on Count Ten of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, all claims against Defendant contained in Plaintiff's Complaint and Amended Complaint should be dismissed pursuant to Rule 56 Federal Rules of Civil Procedure or, in the alternative, this Honorable Court should grant partial summary judgment as it deems appropriate.

Respectfully Submitted,

*/S/ Nixon Kannah,Esq.*

_____
Nixon Kannah, Esq.
Pickett & Craig,
Attorneys for Defendant
80 Main Street Ste 430
West Orange, NJ 07052

Respectfully Submitted,

*/S/ Robert Pickett*

_____
Robert T. Pickett
Pickett & Craig,
Attorneys for Defendant
80 Main Street Ste 430
West Orange, NJ 07052

*Dictated but nr*

May 21, 2014

49