UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TYEAST M. EDMOND,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>PLAINFIELD BOARD OF EDUCATION,<br><br>　　　　　　Defendant. | No. 11-cv-2805 (KM)(JBC)<br><br>**OPINION ON MOTION *IN LIMINE*** |

**KEVIN MCNULTY, U.S.D.J.:**

　　Plaintiff Tyeast M. Edmond's suit arises from her employment as a social worker with the defendant, Plainfield Board of Education ("the Board"). After summary judgment practice, four claims remain for trial: retaliation under Title VII of the Civil Rights Act of 1964; invasion of privacy; false light; and intentional infliction of emotional distress. Emotional distress is also a component of the damages sought.

　　Now before the Court is Edmond's motion *in limine* to bar the testimony of the Board's expert on emotional distress. For the reasons stated herein the motion will be granted as to the causation portion of Ejiofor's opinion and report, and denied with respect to the remaining portions.

### A. QUALIFICATIONS OF EXPERT

　　Edmond challenges the qualifications of Udoka Ejiofor, the Board's proposed expert. Ejiofor, a licensed psychiatric mental health nurse practitioner, performed a psychiatric evaluation and rendered a report concluding that Edmond suffers from Post-Traumatic Stress Disorder ("PTSD") and Narcissistic Personality Disorder ("NPD"). (ECF no. 108-2).

　　Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides certain prerequisites for the admission of expert

1

testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Qualification "refers to the requirement that the witness possess specialized expertise." *Id.*; *see Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) ("Rule 702 requires the witness to have specialized knowledge regarding the area of testimony." (internal quotation omitted)). This requirement is interpreted liberally: a "broad range of knowledge, skills, and training qualify an expert." *Waldorf*, 142 F.3d at 625; *see In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) ("*Paoli I*"). This "liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." *Paoli I*, 35 F.3d at 741. The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and ha[s] been satisfied with more generalized qualifications." *Id.* Exclusion of expert testimony is the exception rather than the rule because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993).

Ejiofor meets the minimal qualifications to testify as an expert in the field of psychiatric nursing. *See Lujano v. Town of Cicero*, No. 07 C 4822, 2011 WL 6097719, at *2 (N.D. Ill. Dec. 6, 2011) ("[N]urses. . . can give expert testimony if

2

they meet the standards for doing so under Rule 702."). Ejiofor is a board certified psychiatric mental health nurse practitioner. (ECF no. 108-4 at 28:17-21). He is licensed as a registered nurse and advanced practice nurse in New Jersey and New York. (ECF no. 108-3). In 2005, Ejiofor received a bachelor of science degree in nursing from the University of Medicine and Dentistry ("UMDNJ"). (ECF nos. 108-3; 108-4 at 11:9-17). In 2011, he received his masters of science in nursing from UMDNJ. (ECF no. 108-4 at 11:25-12:4). Ejiofor's training was in adult psychiatry and mental health. (ECF no. 108-4 at 13:24-14:2). In 2013, Ejiofor received a master's certificate in psychiatric family health from Rutgers University. (ECF no. 108-4 at 13:3-5).[1]

As a licensed and certified psychiatric mental health nurse practitioner, Ejiofor performs psychiatric evaluations and treats psychiatric patients. (ECF no. 108-4 at 38:5-10). He has more than 450 active patients and has been performing psychiatric evaluations since May of 2012. (ECF nos. 108-3; 108-4 at 95:2). Ejiofor is part of various professional associations, including the New Jersey Society of Psychiatric Advanced Practice Nurses, and he is affiliated with St. Clare's Hospital in Denville, New Jersey. (ECF no. 108-3).

Edmond challenges Ejiofor's qualifications on the basis that he does not have a medical degree, and is not a psychiatrist or a psychologist. (ECF no. 108-4 at 27:18-23, 35:11-14, 35:25-36:4). It is well established, however, that qualification as an expert does not correspond in any simple way to specific academic credentials. In fact, "'it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the expert does not have the specialization that the court considers most appropriate.'" *Lauria v. AMTRAK*, 145 F.3d 593, 598–99 (3d Cir. 1998) (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir.

---

[1] Plaintiff's counsel has made much of the fact that Ejiofor also has a Ph.D. in materials science, as if that additional training would somehow detract from his medical expertise. I give that argument no weight. As the holder of a Ph.D., Ejiofor may have used the title "Doctor," but to avoid confusion, the title "Doctor" will not be used to refer to him at trial.

3

1996)). Experts can be qualified "on the basis of practical experience alone, and a formal degree, title, or educational specialty is not required." *Id.* "[I]nsistence on a certain kind of degree or background is inconsistent" with Third Circuit jurisprudence. *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990) ("*Paoli II*"); *see also Waldorf*, 142 F.3d at 626 ("[I]n considering the qualification of witnesses as experts, we stress that ordinarily an otherwise qualified witness is not disqualified merely because of a lack of academic training.").

Ejiofor is qualified to render an opinion as to Edmond's psychiatric state based on his experience and education. *See Guarnieri v. Pa. Fed'n. Bhd. of Maint. of Way Emps.*, 153 F. Supp. 2d 736, 741 (E.D. Pa. 2001) (holding that psychotherapist, who had bachelor of science degree in nursing, and master of science degree in education (specializing in mental health counseling) had "the requisite credentials and expertise to give an expert opinion as to the cause of [plaintiff's] alleged mental and emotional distress."); *Saldana v. Tex. DOT*, 2015 U.S. Dist. LEXIS 83815, *17-18 (W.D. Tex. June 29, 2015) (holding that clinical nurse specialist and board-certified advanced practice nurse was qualified to opine on plaintiff's emotional distress damages in discrimination and retaliation lawsuit even though expert was "not a therapist, psychologist, board certified psychologist, or counselor" and did not "hold herself out as being trained in psychology or psychiatry.").

### B. METHODOLOGY

Edmond contests the reliability of Ejiofor's opinion by attacking the sufficiency of the factual basis underlying it. Edmond asserts that Ejiofor failed to review the records of Dr. Taylor, her treating psychologist. As a result, Edmond asserts, Ejiofor's opinion should be excluded because his opinions are "mere possibilities," as opposed to probabilities within a degree of psychiatric certainty.

"Reliability" requires that the opinion be "based on 'the methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Paoli I*, 35 F.3d at 742 (citing *Daubert*, 509 U.S. at 590). Thus,

4

"the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert*, 509 U.S. at 590). Ultimately, the reliability requirement ensures that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Accordingly, the "focus must be solely on principles and methodology, not on the conclusions they generate." *Paoli I*, 35 F.3d at 744.

Reliability is a "flexible" test. *Kumho Tire*, 526 U.S. at 141 (internal citation omitted). Factors "deemed important" for determining reliability include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli I*, 35 F.3d at 791 n.8; *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 745-46 (3d Cir. 2000). These factors are not exclusive, nor must they all be applied in every case. *Kumho Tire*, 526 U.S. at 141; *Elcock*, 233 F.3d at 746. Rather, whether "specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 153.

Federal Rule of Evidence 703 sets forth the requirements relating to the underlying facts or data on which an expert may base his or her opinion:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the

5

> jury evaluate the opinion substantially outweighs their prejudicial
> effect.

Fed. R. Evid. 703.

"[W]hen a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." *Paoli I*, 35 F.3d at 749. In making that assessment, the judge can not only "take into account the particular expert's opinion that experts reasonably rely on that type of data, as well as the opinions of other experts as to its reliability, but the judge can also take into account other factors he or she deems relevant." *Id.* at 748.

"An expert's testimony must have some connection to existing facts." *JMJ Enters. v. Via Veneto Italian Ice*, No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098, at *16 (E.D. Pa. Apr. 15, 1998). "Experts are expected to make inferences and state opinions and they are granted wide latitude in determining what data is needed to reach a conclusion. Questions as to the sufficiency of an expert's factual basis are generally left to the jury." *Brill v. Marandola*, 540 F. Supp. 2d 563, 568 (E.D. Pa. 2008) (alteration and internal quotation omitted). In *Paoli I*, 35 F.3d at 762, the Third Circuit concluded that either a review of a patient's medical records or a personal examination of a patient provides a reliable source of information to support a medical diagnosis. If an expert's testimony rests on "good grounds . . . it should be tested by the adversary process -- competing expert testimony and active cross-examination." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004).

Ejiofor conducted a psychiatric evaluation of Edmond on October 1, 2016. (ECF no. 108-4 at 44:10-14). Ejiofor has testified that this evaluation was sufficient to permit him to render a diagnosis. (ECF no. 108-4 at 52:6-12, 108:17-22, 109:16-17). He further testified that he personally observed the symptoms of PTSD and NPD during this evaluation, and that these conclusions were reached within a degree of psychiatric certainty. (ECF no. 108-4 at 76:21-25, 94:3-5).

6

Ejiofor's diagnosis is not excludable simply because it is "possible" that his opinion would change if he reviewed the records of Edmond's treating psychologist, Dr. Taylor. (*See* ECF no. 108-4 at 84:5-85:1). His diagnosis is based on the symptoms exhibited by Edmond during the psychiatric evaluation, as well as the information that was provided to him. That is sufficient for Ejiofor to proffer an opinion as to diagnosis. *See Paoli I*, 35 F.3d at 762 ("[A] doctor only needs one reliable source of information showing that the plaintiff is ill and either a physical examination or medical records will suffice -- but the doctor does need at least one of these sources."); *Matlin v. Langkow*, 65 F. App'x 373, 384 (3d Cir. 2003) (holding that expert testimony properly admitted where expert examined plaintiff, even though expert did not review any of plaintiff's medical records; this fact went to weight rather than admissibility of testimony). Ejiofor's failure to review additional medical records is, to be sure, fodder for cross-examination, but not for exclusion of his testimony.

Regarding the admissibility of Ejiofor's causation opinion, however, I cannot reach the same conclusion. I analyze the causation component separately. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999) ("[R]eliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." (citing *Paoli I*, 35 F.3d at 743-45)). Ejiofor opines that Edmond "mimicked" symptoms of PTSD, which would "not support recent trauma."[2] (ECF no. 108-4 at 79:15-18). From this, Ejiofor concluded that Edmond's PTSD was not caused by conditions related to the workplace, which, presumably, he deemed too "recent" to qualify as a cause. Instead, Ejiofor determined that Edmond's PTSD was caused by an "unverbalized childhood experience" and "her unreported conflicted problems with her superiors at work." (ECF no. 108-2, p.7). Ejiofor admitted in his deposition that

---

[2] Ejiofor evaluated Edmond on October 1, 2016. (ECF no. 108-4 at 44:10-14). The alleged retaliation dates back to 2008. (ECF no. 1).

7

Edmond made no reference to a childhood trauma during the evaluation and that he had no information about Edmond's life before 2008. (ECF no. 108-4 at 79:24-80:2).

This opinion is inadmissible for several reasons. First, the factual basis of Ejiofor's opinion related to an "unverbalized trauma" appears nowhere in the record; for all I can tell, it constitutes pure speculation.[3] Ejiofor admitted that he was waiting for, but had not received, information from Edmond regarding any potential childhood trauma. (ECF no. 108-4 at 83:6-15). On this basis alone, Ejiofor's opinion that Edmond's emotional distress was caused by an "unverbalized trauma" is not admissible. See Schneider, 320 F.3d at 404 (stating that expert testimony cannot be based on "'subjective belief or unsupported speculation'" (quoting Paoli I, 35 F.3d at 742)).

Second, there is nothing in the record that establishes that "mimicking" of symptoms is a psychiatric term or condition that is accepted by any recognized authority. Nor is any basis proffered for the notion that such a "mimicking" individual must have suffered an older trauma, rather than a recent one. Cf. Guarnieri, 153 F. Supp. 2d at 742 (permitting psychotherapist to testify based on criteria set forth in "Diagnostic and Statistical Manual of the American Psychiatric Association, Fourth Edition ('DSM-IV'), the leading text in the field of psychiatry/psychology").

Ejiorfor did not explain how he concluded that Edmond's "unverbalized" childhood trauma and her conflicts with supervisors were not "recent," and therefore could be causes of Edmond's PTSD. Indeed, there is not even a definition or explanation as to what qualifies as a "recent" trauma. It is entirely unclear what methodology Ejiofor employed, and whether such methodology has been reviewed or accepted by the psychiatric community. See GE v. Joiner,

---

[3] As part of this motion, Edmond submitted medical records from Dr. Cowan, the Board's previous expert, and Dr. Taylor. (ECF no. 108-1, 108-5). The parties have represented that Dr. Cowan is unavailable to testify in this matter. Neither Dr. Taylor's nor Dr. Cowan's records support Ejiofor's speculation that Edmond had an undisclosed childhood trauma.

8

522 U.S. 136, 146 (1997) (Neither *Daubert* nor "the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."). What Ejiofor has offered on this score is what is sometimes called a "net opinion," *i.e.*, one that is stated by an expert, but not sufficiently connected to the underlying facts or an accepted methodology.

Accordingly, Ejiofor is precluded from opining that Edmond's PTSD was caused by an "unverbalized childhood experience" and "her unreported conflicted problems with her superiors at work."

### C. USE OF DR. COWAN'S REPORT

Edmond asserts that Ejiofor improperly relied on Dr. Cowan's expert report and "parroted" Dr. Cowan's diagnosis, findings, and observations.

Federal Rule of Evidence 703 expressly provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. To that end, "it is well settled that one expert may rely upon another expert's opinion in formulating his own." *Carnegie Mellon Univ. v. Marvell Tech. Group, Ltd.*, 286 F.R.D. 266, 271 (W.D. Pa. 2012); *see E. Allen Reeves, Inc. v. Michael Graves & Assocs.*, No. 10-1393, 2015 U.S. Dist. LEXIS 1212, at *15 (D.N.J. Jan. 6, 2015) (expert "may rely on the opinion of another expert in formulating his or her opinion.").

However, an expert "may not parrot or act as a mouthpiece for other experts' opinions, without independent verification of those opinions." *Leese v. Lockheed Martin Corp.*, 6 F. Supp. 3d 546, 553 (D.N.J. 2014) (citing *Muhsin v. Pac. Cycle, Inc.*, No. 2010-060, 2012 WL 2062396, at *4, *8 (D.V.I. June 8, 2012) (holding that experts may not rely "upon opinions developed by another expert without independent verification or validation of the underlying expert's work" because Rule 703 "contemplates that a testifying expert can validate the

9

facts, data and opinions he relied upon . . . and be subject to cross-examination on them")). "[E]xperts who use data in their reports without independently verifying the accuracy or reliability of those figures fail to satisfy this Circuit's reliability requirement." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 138 (M.D. Pa. 2015); *see In re TMI Litig.*, 193 F.3d 613, 715-16 (3d Cir. 1999) (finding blind reliance by expert on other expert opinions demonstrated flawed methodology under *Daubert*).

Ejiofor makes several references to Dr. Cowan's report, but does not parrot Dr. Cowan's conclusions or diagnosis.

First, Ejiofor notes that Dr. Cowan diagnosed Ms. Edmond with major depressive disorder; Ejiofor, however, concluded that Edmond did not have major depression based on the symptoms she exhibited and the information she provided to Ejiofor. (ECF 108-2, p.6). In disagreeing with Dr. Cowan's diagnosis, Ejiofor obviously was not "parroting" Dr. Cowan's opinion or offering it as his own.

Second, Ejiofor notes that in 2013 Ms. Edmond told Dr. Cowan her memory was intact, but in 2016 she told Ejiofor she was having issues with her memory. Edmond could not specify to Ejiofor when she began to have issues with her memory loss. (ECF 108-2, p.6). From this information, Ejiofor concluded that Edmond's memory loss began sometime after her meeting with Dr. Cowan in 2013. He attributed it to stress, anxiety, and lack of sleep due to Edmond's having held multiple jobs in the period 2013–16. (ECF no. 108-2, p.6). This conclusion, while it used Edmond's statement to Dr. Cowan as a baseline, was based on Ejiofor's firsthand evaluation of Edmond. *See Durflinger v. Artiles*, 563 F. Supp. 322, 327–28 (D. Kan. 1981) (deposition testimony of psychiatrist who had seen patient only once was admissible when opinion was based in part on psychologist's interviews of patient), *aff'd*, 727 F.2d 888 (10th Cir. 1984).

Third, in diagnosing Edmond with NPD, Ejiofor noted that his diagnosis was supported by facts in Dr. Cowan's report. Specifically, Dr. Cowan had

noted that Edmond had a pattern of conflicts and complaints with authorities in other educational settings. (ECF no. 108-2, p.7). However, Ejiofor's diagnosis of NPD was based primarily on his observations of Edmond. (ECF no. 108-4 at 88:6-14; 94:3-5).

In sum, a review of the report shows that Ejiofor, although he notes certain items in Dr. Cowan's report, will not be merely reciting Dr. Cowan's opinions or presenting them as his own. Ejiofor's own evaluation and interview of Edmond form the basis of his opinion.[4]

### D. CONCLUSION

For the reasons stated above, Edmond's motion to bar the testimony of Ejiofor is granted as to the causation portion of Ejiofor's opinion and report, and denied with respect to the remaining portions.

Dated: September 13, 2013

Kevin McNulty
**United States District Judge**

---

[4] Because Ejiofor's causation opinion is not admissible, this court does not address Ejiofor's conclusion that Edmond's PTSD was caused by "unreported conflicted problems with her superiors at work, as noted by Dr. Cowan." (ECF no. 108-2, p.7).

11